IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00401-CV

 

Joseph W. McCuen, et al.,

                                                                                    Appellants

 v.

 

George Philips Huey, Jr.,

                                                                                    Appellee

 

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. C200500404

 



Opinion



 








            This is a declaratory judgment/interpleader
action instituted by Chesapeake Exploration Limited Partnership to determine
the ownership of certain non-participating royalty interests.  The trial court
granted George Philips Huey, Jr.’s summary-judgment motion, declaring him to be
the sole owner of these interests.  The primary issues to be resolved in this
appeal are: (1) whether George Philips Huey, Jr. or the heirs of his aunt Mary
Huey own these non-participating royalty interests; (2) whether Chesapeake,
which owns the pertinent working interests, may be required to pay the
attorney’s fees of an attorney ad litem appointed to represent the interests of
various parties served by publication; and (3) whether those of Mary’s heirs
who appeared and retained counsel are entitled to their attorney’s fees.  We
will affirm.

Background[1]

            The non-participating royalty
interests in dispute lie within two tracts of acreage which were owned by
brothers Paul Huey and George Philips Huey, Sr. (“Phil, Sr.”).  They inherited
“Tract 1” from their father in the 1920’s.  They acquired “Tract 2” by two
separate conveyances in the 1930’s.  Paul married Mary Huey in 1946.  Paul,
Phil, Sr. and their wives executed a warranty deed in 1950 conveying Tract 2 to
the Dunsons, “reserving to [them]selves, however, a one half un-divided
interest in and to the usual one eighth oil, gas and other minerals royalty (as
that term is understood in Texas) of all oil, gas and other minerals in, on or
under this property.”  A few days later, Paul and Mary executed a warranty deed
conveying Tract 1 to Phil, Sr. with an identical reservation to “[them]selves.”

            Paul died in 1960, and his will was
probated in Alabama, where Mary and he were then domiciled.  His will devised
his “undivided one-half interest” in the disputed lands to Phil, Sr. and named
Mary as beneficiary of the residue of his estate.

            Appellee George Philips Huey, Jr.
(“Phil, Jr.”) is the undisputed successor to any interest his mother and father
held in the non-participating royalty interests at issue.

            Mary died in 1967, and her will was
probated in Alabama.  Her will named twenty-five beneficiaries in various
percentages as the devisees of the residue of her estate, which would include
any interest she owned in the non-participating royalty interests at issue.[2]

            Chesapeake acquired the working
interests in 2000.  It filed this suit to determine ownership of the
non-participating royalty interests.  Several of Mary’s heirs (hereinafter,
“Ettinger”) appeared and filed a general denial.[3]  Mary’s
niece Joan Elizabeth Hooker Clark filed a pro se answer by letter stating her
belief that she had inherited a percentage of the interests from Mary under her
will.  The court approved service by publication on several of Mary’s heirs
whose whereabouts are unknown (hereinafter, “McCuen”) and appointed an attorney
ad litem to represent their interests.[4]

            The parties filed a Stipulation of
Facts as previously noted, expressly reserving the right: (1) “to object to any
of the stipulated facts on grounds of irrelevancy or immateriality”; and (2)
“to offer evidence as to all facts not expressly agreed upon.”  Chesapeake, Phil, Jr., Ettinger, McCuen, and Clark all signed this stipulation.

            Phil, Jr. filed a traditional
summary-judgment motion presenting two primary arguments to support his
contention that he is the sole owner of the disputed interests.  First, Phil,
Jr. contends that Phil, Sr. inherited these interests from Paul under his will,
and Phil, Jr. in turn obtained them from his father by mesne conveyances in
part and by inheritance in part.  And second, Phil, Jr. contends that Mary’s
inclusion as a grantor in the 1950 warranty deeds conveying Tracts 1 and 2 was
only pro forma and not indicative of a gift from Paul to Mary of his royalty
interests.

            Ettinger filed a hybrid summary-judgment
motion containing both no-evidence and traditional summary-judgment claims. 
Ettinger’s summary-judgment evidence includes: (1) the Petition for Final
Settlement filed by Mary in Paul’s probate proceedings, in which Mary stated
that Paul’s interests had been disposed of before his death; and (2) the
probate court’s decree that Mary was Paul’s sole legatee and devisee.  Based on
these probate documents, Ettinger contends that neither Chesapeake nor Phil,
Jr. can produce “more than a scintilla of evidence which would raise a material
issue of fact regarding the transfer of Paul Huey’s royalty interest in his
probate proceedings.”

            In the traditional portion of the
summary-judgment motion, Ettinger argues that she is entitled to judgment as a
matter of law because: (1) the aforementioned probate proceedings establish
that she and Mary’s other heirs inherited the disputed interests; (2) the
warranty deeds referenced in Phil, Jr.’s summary-judgment motion constituted a
gift from Paul to Mary or memorialized such a gift; or (3) ownership of Paul’s
royalty interests is governed by the laws of intestate succession because those
interests were not addressed by the probate court and any probate of Paul’s
will in Texas is now barred by limitations.

            McCuen filed a traditional
summary-judgment motion contending, much like Ettinger, that: (1) the Alabama
probate proceedings establish that Paul gave the royalty interests to Mary
before his death; and (2) the warranty deeds and other pertinent documents memorialize
this gift.

            Phil, Jr. challenged these contentions
in his summary-judgment response.  First, he argued that Ettinger and McCuen
failed to conclusively establish a parol gift of the interests from Paul to
Mary because there is no evidence that Mary took possession of these interests
or made valuable and permanent improvements thereto.  Second, Phil, Jr. argued
that the Alabama probate proceedings did not address the royalty interests
presently in dispute because Phil, Sr. and Mary “overlooked” these interests.

            In Ettinger’s response to Phil, Jr.’s
summary-judgment motion, she first objected to two portions of the supporting
affidavit Phil, Jr. signed and attached to his motion on the basis that these
portions contained imadmissible conclusory statements.  On the merits, Ettinger
sought to distinguish one of the cases relied on by Phil, Jr.; she reurged her
contention that the Alabama probate proceedings are conclusive on the ownership
question; and she argued that Phil, Jr. was not entitled to a summary judgment
on Ettinger’s and McCuen’s “gift theory” because he failed to specify which
elements of this theory he was challenging.

            McCuen raised similar objections to
Phil, Jr.’s affidavit in his summary-judgment response.  Otherwise, McCuen
merely challenged Phil, Jr.’s contentions as speculative and inadequate to
justify a summary judgment in his favor.

            Chesapeake, Ettinger, and McCuen all
sought attorney’s fees.  Chesapeake did so by motion supported by affidavit of
counsel.  Ettinger requested attorney’s fees in her summary-judgment motion and
supported this request with an affidavit of counsel.  McCuen initially filed a
motion for attorney’s fees without supporting proof.  Phil, Jr. requested in
his summary-judgment motion that each party pay his or her own attorney’s fees.

            Near the conclusion of the summary-judgment
hearing, McCuen’s counsel advised the court that he had an attorney’s-fee
affidavit ready to present to the court at that moment or on another day if the
court preferred to address attorney’s fees in a later hearing.  After hearing
additional argument and inviting each party to submit a proposed judgment, the
court advised McCuen’s counsel that he would prefer to address attorney’s fees
in that hearing.  Chesapeake’s counsel stated that he would not object to
“whatever the Court determines to be the appropriate amount of attorney’s
fees.”  Phil, Jr.’s counsel stated that he had no objection, “knowing that [Chesapeake] is going to take care of those fees.”  Chesapeake’s counsel promptly responded
that Chesapeake had not agreed to “take care” of those fees.

            McCuen’s counsel suggested that he
submit his affidavit to the court “and then maybe allow all the parties to
submit a very, very brief brief on who should pay for it.”  Chesapeake’s counsel
stated on the record that he had no objection to the admission of the
affidavit, and it was admitted.  Counsel for Phil, Jr. and for Ettinger both
agreed that Chesapeake should be required to pay McCuen’s attorney’s fees.  Chesapeake’s counsel argued that Chesapeake should not have to pay these fees and further
advised the court that Chesapeake wanted the court to order one of the other
parties to pay Chesapeake’s attorney’s fees.  The court took the issue under
advisement.

            The court signed a final judgment
granting Phil, Jr.’s summary-judgment motion and ordering Chesapeake to pay
McCuen’s trial attorney’s fees.  McCuen filed a combined motion for leave to
file supplemental evidence on the issue of appellate attorney’s fees and motion
to modify the judgment to include appellate attorney’s fees.  This pleading was
supported by affidavit of counsel stating what counsel believed to be
reasonable and necessary appellate attorney’s fees.

            In a post-judgment hearing, Phil, Jr.
and Chesapeake disputed, among other things, whether the appellate attorney’s
fees sought by McCuen were reasonable and necessary.  However, Ettinger agreed
that the fees sought by McCuen were reasonable and necessary.  After the
hearing, the court granted McCuen leave to file the additional evidence by
signed order.  The court also signed an amended judgment awarding McCuen the appellate
attorney’s fees sought in the motion.

Standards of Review

            We review a trial court’s summary
judgment de novo.  Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003).  In reviewing a summary judgment, we must consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all of the evidence presented.  See Goodyear Tire & Rubber Co.
v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); City
of Keller v. Wilson, 168 S.W.3d 802, 822-24 (Tex. 2005)).  We must consider
all the evidence in the light most favorable to the nonmovant, indulging every
reasonable inference in favor of the nonmovant and resolving any doubts against
the motion.  See Goodyear Tire, 236 S.W.3d at 756 (citing Sudan
v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); Spates, 186
S.W.3d at 568).

            When competing motions for summary
judgment are filed and some are granted while others denied, the general rule
is that an appellate court should determine all questions presented and render
the judgment the trial court should have rendered.  Tex. Workers’
Comp. Comm’n v. Patient Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004); Am. Hous. Found. v. Brazos County Appraisal Dist., 166 S.W.3d 885, 887 (Tex. App.—Waco 2005, pet. denied).  However, an appellate court may reverse and remand if
resolution of the pertinent issues rests in disputed facts or if the parties’
motions are premised on different grounds.  See Sarandos v. Blanton, 25
S.W.3d 811, 814 & n.5 (Tex. App.—Waco 2000, pet. denied).

Summary-Judgment Objections

            Ettinger contends in his second issue
that the court abused its discretion by overruling her objections to Phil,
Jr.’s summary-judgment proof.  Phil, Jr. responds that Ettinger failed to
preserve this issue for review because she did not obtain a written ruling on
the objections and, in the alternative, the issue is moot because the substance
of the statements which are the focus of Ettinger’s objections was established
by the parties’ stipulation.

            With regard to preservation, an
objection to the conclusory nature of summary-judgment evidence is a challenge
to the substance of the evidence and need not be preserved for appellate
review.[5]  Choctaw
Props., L.L.C. v. Aledo Indep. Sch. Dist., 127 S.W.3d 235, 241-42 (Tex. App.—Waco 2003, no pet.).

            Ettinger’s objections were directed to
the following statements in Phil, Jr.’s affidavit:

·       
My father and his younger
brother, Paul Huey, inherited 2/3 of the 217-3/4 acre “W.G. Huey Home Farm,”
share and share alike, from their father W.G. Huey in 1933 and then inherited
the remaining 1/3 life estate left to his second wife, Mollie Huey, in 1942.

 

·       
Beginning in 1933, these farms
were managed together, primarily by my father, Phil. G. Huey, with the help of
two tenant farmers.

 

·       
In the deed to my father of
the “W.G. Huey Home Farm,” both Paul and Mary signed as grantors, although it
was Paul’s separate property which he inherited prior to his marriage to her.

 

·       
In the conveyance to the
Dunsons, again Mary co-signed with her husband as grantors, even though this
“West Farm” was Paul’s separate property acquired in 1934 and 1938 before his
marriage.

 

Ettinger argues that the first two statements are
conclusory because they refer “to facts which supposedly occurred when [Phil,
Jr.] was but an infant and toddler.”  Ettinger argues that the latter two
statements are conclusory insofar as they seek to characterize the property as
Paul’s separate property.

            Nevertheless, the parties’ stipulation
states the same or substantially similar facts regarding the manner by which
Paul and Phil, Jr. acquired their respective interests in Tracts 1 and 2.  The
stipulation also explicitly states that the interest Paul held in these
properties was “his separate property” in October 1950, before he (with Mary) executed
the deeds mentioned in Phil, Jr.’s affidavit in December 1950.

            “A stipulation is a binding contract
between the parties and the court.”  Solares v. Solares, 232 S.W.3d 873,
883 (Tex. App.—Dallas 2007, no pet.); Houston Lighting & Power Co. v.
City of Wharton, 101 S.W.3d 633, 641 (Tex. App.—Houston [1st Dist.] 2003,
pet. denied).  The contents of a stipulation constitute judicial admissions,
are conclusive on the issues addressed, and estop the parties from claiming to
the contrary.  See Shepherd v. Ledford, 962 S.W.2d 28, 33 (Tex. 1998); Solares, 232 S.W.3d at 883; Houston Lighting & Power,
101 S.W.3d at 641.

            Here, Ettinger stipulated to the facts
and characterizations which she contends should not have been included in Phil,
Jr.’s affidavit.  Because of the stipulation, she is estopped to make this
claim.  Id.  Accordingly, we overrule Ettinger’s second issue.

Parol Gift

            McCuen contends in his third issue
that the summary-judgment evidence conclusively establishes that Paul made a parol
gift of the disputed royalty interests to Mary before his death.  Ettinger makes
the same argument as part of her first issue.

            The statute of conveyances requires
that a conveyance of real property “be in writing” and “subscribed and
delivered by the conveyor” or his agent.  Tex.
Prop. Code Ann. § 5.021 (Vernon 2003).  The current version of the
statute does not vary appreciably from the version in effect in 1950 when the gift
was allegedly made.[6]

            To establish a parol gift of an
interest in real property (and avoid the requirements of the statute of conveyances),
a party must show: (1) a gift in praesenti, that is, a present gift; (2)
possession under the gift by the donee with the donor’s consent; and (3) permanent
and valuable improvements by the donee with the donor’s consent or other facts
demonstrating that the donee would be defrauded if the gift were not enforced. 
See Flores v. Flores, 225 S.W.3d 651, 655 (Tex. App.—El Paso 2006, pet.
denied); see also Dawson v. Tumlinson, 150 Tex. 451, 242 S.W.2d 191,
192-93 (1951) (citing Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114,
1116 (1921)).  As the Court explained in Dawson, the rule for parol
gifts of real property is the same as that for parol sales “except there must
be evidence of gift, and of course proof of a consideration is not required.”  Dawson, 242 S.W.2d at 192-93.

            Here, McCuen and Ettinger claim that
the two deeds executed by Paul and Mary in 1950 either constituted a gift from
Paul to Mary or memorialized such a gift.  Ettinger in particular argues that
these deeds establish a gift of one-half of Paul’s royalty interest to Mary,
while Paul reserved one-half for himself.  The parties stipulated that in the
first of those deeds (dated December 2, 1950), Paul, Phil, Sr. and their wives
(Mary and Homerette) conveyed Tract 2 to the Dunsons, “but reserved a
non-participating royalty interest described as ‘a one-half undivided interest
in and to the usual one eighth oil, gas and other minerals royalty (as that
term is understood in Texas) of all oil, gas and other minerals in, on or under
this property.’”  They similarly stipulated that in the second deed (dated
December 7, 1950), Paul and Mary conveyed Tract 1 to Phil, Sr. “but reserved a
non-participating royalty interest described as ‘a one-half undivided interest
in and to the usual one eighth oil, gas and other minerals royalty (as that
term is understood in Texas) of all oil, gas and other minerals in, on or under
this property.’”

            Phil, Jr. contends that the decision
of the Texarkana Court of Civil Appeals in McKee v. Douglas, 362 S.W.2d 870
(Tex. Civ. App.—Texarkana 1962, writ ref’d n.r.e.), controls.  There, the court
rejected a contention very similar to that presented by McCuen and Ettinger.

            Appellants by their second point
contend to the effect that the deed from I.A. McKee and Annie McKee to the
Douglases which reserved the 1/4th royalty interest passed title to Annie McKee
in her own individual right and that she had never signed an instrument
conveying the interest to appellees.  This point is clearly without merit under
this record and is overruled.

 

             The 38 1/2 acres was the separate
property of I.A. McKee, it was not homestead, and Mrs. McKee had no character
of interest or title in said tract.  Her joinder in the conveyance to the Douglases was unnecessary.  The reservation or exception of the royalty interest in the
deed could inure only to the benefit of the owner, I.A. McKee.  Such
reservation or exception did not amount to a gift to Mrs. McKee of a portion of
such excepted or reserved royalty interest.  The only way for I.A. McKee to
have made a gift to Mrs. McKee of an interest in his separate property would
have been by the execution of a deed.  See Art. 1288, V.A.C.S.  Also see 27 Tex. Jur. 2d Gift, Sec. 30, wherein it is stated: ‘The only
method of concurrently giving an estate in land and perfecting the gift is by a
deed conveying the property to the donee.’  Since I.A. McKee never executed
such a deed to Mrs. McKee she never acquired any interest in the royalty in
question by gift or in any other manner under the facts in this case.

 

Id. at
875-76 (some citations omitted).

            The principle set out in McKee
has been consistently followed in other cases in which a grantor with no record
title joined his or her spouse in the execution of a deed which purported to
reserve a mineral interest to the grantors and later claimed (or his or her
heirs later claimed) that the reservation created an enforceable property
interest.  See Angell v. Bailey, 225 S.W.3d 834, 840 (Tex. App.—El Paso
2007, no pet.); Little v. Linder, 651 S.W.2d 895, 900-01 (Tex. App.—Tyler 1983, writ ref’d n.r.e.); Canter v. Lindsey, 575 S.W.2d 331, 335
(Tex. Civ. App.—El Paso 1978, writ ref’d n.r.e.); Ryan v. Fort Worth Nat’l
Bank, 433 S.W.2d 2, 7-8 (Tex. Civ. App.—Austin 1968, no writ); see also
Joseph W. McKnight, Family Law: Husband and Wife, 38 Sw. L.J. 131, 136 & nn.56-62
(1984).

            As the court in McKee explained,
“The only way for [a donor spouse] to have made a gift to [his spouse] of an
interest in his separate property would have been by the execution of a deed.”  McKee,
362 S.W.2d at 876; accord McKnight, 38 Sw.
L.J. at 136 n.62 (“In order for the husband to have any interest in the
mineral reservation, the wife would have had to convey such interest to him
before conveying the land to a third party.”).

            McCuen also cites a memorandum opinion
of this Court in which we addressed the “well established” proposition “that when
a husband uses separate property consideration to pay for land acquired during
the marriage and takes title to the land in the name of husband and wife, it is
presumed he intended the interest placed in his wife to be a gift.”  Cockerham
v. Cockerham, 527 S.W.2d 162, 168 (Tex. 1975) (cited by Hoover v. Koss,
No. 10-04-00015-CV, 2005 WL 1488070, at *2 (Tex. App.—Waco June 22, 2005, no
pet.) (mem. op.)).  McCuen argues that this presumption should likewise apply
when a spouse conveys separate property to a third party but reserves an
interest in that property in the name of both spouses.  However, we hold that
the presumption does not apply.  Here, Paul did not “pay” any consideration to
reserve the disputed mineral interests.  Cf. id.  Thus, the presumption
applies only when a spouse uses separate property consideration to acquire a
new interest in real property and takes title to that interest in the name of
both spouses.

            Applying McKee to the elements
required to establish a parol gift of real property, the reservations of
mineral interests in the deeds do not conclusively establish that Paul made a
gift in praesenti to Mary of any interest in Tract 1 or 2.  See Dawson,
242 S.W.2d at 192-93; Flores, 225 S.W.3d at 655.

            McCuen and Ettinger also contend that
these reservations served to memorialize a prior parol gift of one-half of Paul’s
interest in Tracts 1 and 2 to Mary.  The second element for establishing a
parol gift of realty is possession under the gift by the donee with the donor’s
consent.  Id.  To prove this element, a plaintiff must show “actual
possession” of the realty.  Powell v. Wiley, 141 Tex. 74, 170 S.W.2d 470,
471 (1943); Hernandez v. Alta Verde Indus., Inc., 666 S.W.2d 499, 503
(Tex. App.—San Antonio 1983, writ ref’d n.r.e.); accord Harris v. Potts,
545 S.W.2d 126, 127 (Tex. 1976) (Hooks v. Bridgewater “requires actual
possession”).  However, the summary-judgment evidence conclusively establishes
that Paul and Mary lived in Alabama at the time of the alleged gift, and Mary
remained there until her death.  Thus, McCuen and Ettinger failed to
conclusively establish that Mary took “actual possession” of any interest in
Tract 1 or 2.  Cf. Natural Gas Pipeline Co. of Am. v. Pool, 124 S.W.3d 188,
192-93 (Tex. 2003) (to establish “actual possession” of severed oil or gas
interest for limitations title, there must be “drilling and production of oil
or gas”).

            Accordingly, we overrule McCuen’s
third issue and that part of Ettinger’s first issue in which she contends that
Paul made a parol gift to Mary.

Conveyance

            McCuen contends in his second issue
that the devise of the Johnson County property in Paul’s will was adeemed
because Paul conveyed the disputed royalty interests to Mary in the 1950 deed
reservations.  Ettinger likewise contends as part of her third issue that Paul
conveyed the disputed interests to Mary.  However, a grantor with no record
title cannot create title in herself by joining her spouse in the execution of
a deed which purports to reserve a mineral interest to the grantors.  See
Angell, 225 S.W.3d at 840; Little, 651 S.W.2d at 900-01; Canter,
575 S.W.2d at 335; Ryan, 433 S.W.2d at 7-8; McKee, 362 S.W.2d at
875-76; see also McKnight, 38 Sw.
L.J. at 136 & nn.56-62.  Therefore, we overrule McCuen’s second
issue and that part of Ettinger’s third issue in which she contends that Paul
conveyed the disputed interests to Mary.

 

 

Paul’s Probate Proceedings

            McCuen contends in his first issue and
Ettinger contends in her first and third issues that Phil, Jr. failed to
conclusively establish that the disputed interests passed to Phil, Sr. under
the terms of Paul’s will.  McCuen and Ettinger rely primarily on: (1) an
affidavit Phil, Sr. filed with the Alabama probate court stating that any
interest Paul had in Tracts 1 and 2 had been disposed of before his death; and
(2) the Alabama court’s decree that Mary was Paul’s sole legatee and devisee of
any property which passed under his will.  Phil, Jr. responds that Phil, Sr.
did not disclaim his interest in the subject property, Mary did not inherit the
subject property in the Alabama probate proceedings, and thus, Phil, Sr.
inherited the disputed royalty interests under the terms of Paul’s will.  To
resolve these contentions, we must first determine whether to apply Alabama law or Texas law.

Choice of Law

            When a will has been duly probated in
another state, the judgment of the probate court must be given full faith and
credit in this state.  U.S. Const. art. IV, § 1; Holland
v. Jackson, 121 Tex. 1, 37 S.W.2d 726, 727-28 (1931).  “The validity of the
judgment is determined by the laws of the state where it was rendered.”  Bard
v. Charles R. Myers Ins. Agency, Inc., 839 S.W.2d 791, 795 (Tex. 1992); accord Mindis Metals, Inc. v. Oilfield Motor & Control, Inc., 132
S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  However, a
party seeking to establish the validity of such a judgment must: (1) file a
timely motion requesting the court to take judicial notice of the applicable
law of the other state, and (2) provide the court with “sufficient information”
regarding the law to be noticed.  See Tex.
R. Evid. 202; Brown v. Lanier Worldwide, Inc., 124 S.W.3d 883, 894
n.20 (Tex. App.—Houston [14th Dist.] 2004, no pet.); Pittsburgh Corning
Corp. v. Walters, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet.
denied); Olin Guy Wellborn, III, Judicial Notice Under Article II of the
Texas Rules of Evidence, 19 St.
Mary’s L.J. 1, 26-27 (1987).  Failure to comply with these requirements
results in a presumption that the law of the other state is the same as Texas law.[7] 
See Mindis Metals, 132 S.W.3d at 487; Brown, 124 S.W.3d at 894
n.20; Pittsburgh Corning, 1 S.W.3d at 769; Wellborn, 19 St.
Mary’s L.J. at 27.

            Here, no party asked the trial court
to take judicial notice of the applicable laws of Alabama, and there is no
indication that the court undertook to do so on its own motion.  Therefore, we
will presume that the pertinent law of Alabama is identical to Texas law.  Id.

Disclaimer

            McCuen and Ettinger contend that Phil,
Sr. disclaimed any interests he might have been entitled to under Paul’s will
by an affidavit Phil, Sr. filed with the Alabama court.

            Item Three of Paul’s will provides:

            I give, devise and bequeath to my
beloved brother, should he survive me or in the event he predeceases me to his
surviving issue, my undivided one-half interest in approximately four hundred
fifty acres of farm land and the equipment located on said farm in Johnson County, Texas.  This is the property which I now jointly own with my said brother
Phil Huey.

 

Phil, Sr.’s “disclaimer” provides in pertinent
part:

            That in the last will and testament of
his brother, Paul Huey, certain real property and equipment located thereon in Johnson County, Texas was devised and bequeathed to him.

 

            That he knows of his own knowledge and
participated in the conveyance of said property and equipment by himself and
Paul Huey prior to the death of Paul Huey, and that all of the property covered
by ITEM THREE of the last will and testament of Paul Huey has been disposed of,
prior to Paul Huey’s death, and that there was no property to pass to him under
the terms of Paul Huey’s will.

 

            That he does hereby consent to the
final settlement of the estate of Paul Huey by Mary Huey, the sole legatee,
devisee, beneficiary and distributee of all of the property owned by Paul Huey
at his death and passing under the last will and testament of Paul Huey,
deceased.

 

            In Mary’s petition for final
settlement of the estate, she affirmatively stated, “All of the property
covered by ITEM THREE of the Will had been disposed of by the Decedent prior to
his death and none of that property passed under the terms of the Will.”

            The Alabama probate court’s decree of
final settlement makes no reference to any property in Johnson County, Texas and declares Mary to have been “the sole legatee and devisee of the property passing
under the last will and testament of Paul Huey.”

            Section 37A of the Texas Probate Code
provides for a written disclaimer by a beneficiary of any property or interest
he would otherwise inherit.  Tex. Prob.
Code Ann. § 37A (Vernon Supp. 2007).  Section 37A was first enacted in
1971.[8]  See
Act of May 29, 1971, 62d Leg., R.S., ch. 979, § 1, 1971 Tex. Gen. Laws 2954 (amended
1977).  The Legislature enacted section 37A at least in part because Texas law
at that time “relating to the disclaimer of property under any will of or by
inheritance from a decedent [was] vague and unclear.”  Act of May 29, 1971, 62d
Leg., R.S., ch. 979, § 2, 1971 Tex. Gen. Laws at 2956; see also Badouh v.
Hale, 22 S.W.3d 392, 396 (Tex. 2000) (“The Legislature enacted section 37A
to clarify Texas’s disclaimer law.”).  Nevertheless, a beneficiary’s right to
disclaim his or her inheritance has long been recognized in Texas.[9] 
 See First City Nat’l Bank of Houston v. Toombs, 431 S.W.2d 404,
406 (Tex. Civ. App.—San Antonio 1968, writ ref’d n.r.e.) (“The right of a
devisee or legatee under a will to decline a devise or bequest in toto is
generally recognized.”); see also Smith v. Negley, 304 S.W.2d 464, 468
(Tex. Civ. App.—Austin 1957, no writ); Torno v. Torno, 95 S.W. 762, 763
(Tex. Civ. App.—Galveston 1906, writ ref’d).

            An annotation on the topic of
disclaimers recognizes that some courts have found particular disclaimers to be
ineffective “where made under a misapprehension as to or in ignorance of [the
beneficiary’s] rights or interest accruing [under the will].”  C.P. Jhong,
Annotation, What Constitutes or Establishes Beneficiary’s Acceptance or
Renunciation of Devise or Bequest, 93 A.L.R.2d 8, 58 (1964).[10] 
This approach has support in at least one early Texas decision in which it was
argued that the plaintiff was estopped to claim certain property as the sole
heir of her father because she had elected to take the property under another
relative’s will.  See Packard v. De Miranda, 146 S.W. 211, 212-13 (Tex.
Civ. App.—San Antonio 1912, writ ref’d).  The court rejected this contention
because the plaintiff

was ignorant of the language in which the will and
deeds were written, and ignorant of the facts and circumstances surrounding the
property and its disposal.  To hold her in her ignorance and innocence bound as
to an election would be to make a laughing stock of equity and a burlesque of
justice.  She could not have made an intelligent choice, if the will had
demanded of her an election, because of her ignorance of the facts in
connection with the property.

 

Id. at
215.

            From these authorities, we conclude
that, to be effective, a disclaimer of an inheritance is enforceable against
the maker only when it has been made with adequate knowledge of that which is
being disclaimed.  Cf. Nw. Nat’l Cas. Co. v. Doucette, 817 S.W.2d 396,
400-01 (Tex. App.—Fort Worth 1991, writ denied) (disclaimer enforceable even though
maker was mistaken about who would inherit disclaimed property as a result of
disclaimer).

            Here, the disputed royalty interests
were omitted from the administration of Paul’s probate estate.[11] 
In fact, Mary herself stated in the petition for final settlement of Paul’s
estate that “none of [the Johnson County] property passed under the terms of
the Will” (which necessarily includes the residuary clause).  At most, Phil,
Sr.’s affidavit reflects a mistaken understanding on his part (shared by Mary)
that Paul did not own any interest in the Johnson County property at the time
of his death.  Therefore, we hold that Phil, Sr. did not knowingly disclaim his
inheritance of the disputed royalty interests.

The Probate Court’s Judgment

            McCuen and Ettinger also contend that
the disputed interests passed to Mary at Paul’s death because the Alabama probate court decreed that Mary was Paul’s sole legatee and devisee of any property
which passed under his will.

            The Alabama court’s Decree of Final
Settlement provides in pertinent part:

            And it further appearing to the Court
that Mary Huey is the sole legatee and devisee of the property passing under
the last will and testament of Paul Huey, deceased, and that Mary Huey as
executrix has complied with the terms of said will by paying over and
delivering to herself all of the property and assets in her hands belonging in
the estate except certain stocks and bonds hereinafter described.

 

In the next paragraph, the probate court awarded
title to more than 2,500 shares of stock to Mary.  The decree does not make a
specific reference to any other property belonging to the estate.

            A close reading of the petition for
final settlement filed by Mary reveals that the only property she considered to
be in Paul’s estate at his death was “moneys and other personal property.”

            Therefore, because Phil, Sr’.s affidavit
and Mary’s petition for final settlement both advised the Alabama probate court
that Paul held no ownership interest in the Johnson County property at the time
of his death and because the probate court’s decree make no reference to the
Johnson County property, we hold that the disputed royalty interests did not
pass to Mary at Paul’s death despite her designation as Paul’s sole legatee and
devisee under the will.

Muniment of Title

            Ettinger also contends that the filing
of certified copies of the probate documents from Paul’s estate in the deed
records of Johnson County established title in Mary’s heirs under section 96 of
the Probate Code.  Section 96 does authorize the filing of a certified copy of
a duly probated will and the record of its probate from another state or nation
in the deed records as a muniment of title.  See Tex. Prob. Code Ann. § 96 (Vernon 2003); Lane v. Miller
& Vidor Lumber Co., 176 S.W. 100, 103 (Tex. Civ. App.—San Antonio 1915,
writ ref’d); 17 M.K. Woodward, Ernest E.
Smith, III, Ione Stumberg, & W.W. Gibson, Jr., Texas Practice: Probate and
Decedents’ Estates § 411 (1971);[12] see
also Jones v. Jones, 301 S.W.2d 310, 314 (Tex. Civ. App.—Texarkana 1957, writ
ref’d n.r.e.) (Louisiana will “was merely filed for record in the office of the
 County Clerk as a muniment of title and recorded in the deed records”).

            Black’s Law Dictionary defines
a muniment of title as “[d]ocumentary evidence of title, such as a deed or a
judgment regarding the ownership of property.”  Black’s Law Dictionary 1043 (8th ed. 2004).  As this Court
has observed, one of the purposes of probating a will as a muniment of title “is
to provide continuity in the chain of title to estate properties by placing the
will on the public record.”  In re Est. of Kurtz, 54 S.W.3d 353, 355 (Tex. App.—Waco 2001, no pet.).

            Although Paul’s will references the
Johnson County property, Phil, Sr’s affidavit and Mary’s petition for final
settlement both state that Paul owned no real property in Johnson County at the
time of his death, and the probate decree is silent with respect to the
property at issue.  Under these circumstances, the probate record does not “provide
continuity in the chain of title.”  Thus, we hold that the probate documents
which were filed in the deed records do not constitute a muniment of title.

Omitted Property

            When any part of the decedent’s
property is omitted from a will or from the administration of his estate, Texas law has long recognized that an heirship proceeding may be instituted to determine
who lawfully inherited the omitted property.  See Tex. Prob. Code Ann. § 48 (Vernon Supp. 2007).[13] 
This is in essence what Chesapeake’s suit is, even though no party has cited
section 48 or otherwise characterized this as an heirship proceeding.

            Mary did not acquire any ownership of
the disputed royalty interests by her inclusion in the warranty deeds, but Paul
plainly reserved an undivided 1/16 non-participating royalty interest in Tract
1 and a 1/32 non-participating royalty interest in Tract 2.[14] 
At Paul’s death, Mary and Phil, Sr. apparently failed to take these
reservations in account, and they were not included in the administration of
Paul’s estate.  Despite this oversight on their parts, these interests were
inherited by Phil, Sr. under Paul’s will.  Furthermore, the parties have
stipulated that Phil, Jr. has succeeded to any interest his father held.  Thus,
the summary judgment record conclusively establishes that Phil, Sr. inherited
the disputed royalty interests under Paul’s will and Phil, Jr. presently owns
those interests.

            Accordingly, we overrule McCuen’s
first issue and Ettinger’s first and third issues.

Take-Nothing Judgment

            Chesapeake contends in its first issue
that the court erred by rendering a take-nothing judgment against it.  The gist
of Chesapeake’s complaint is that it obtained the precise relief it sought,
namely, an adjudication of title to the disputed royalty interests.  Thus, Chesapeake contends that it is a “prevailing party” and should not have suffered a
take-nothing judgment.

            Black’s defines a take-nothing
judgment as “[a] judgment for the defendant providing that the plaintiff
recover nothing in damages or other relief.”  Black’s
Law Dictionary at 861.  Although it is true that the primary thrust of Chesapeake’s suit was to determine ownership of the disputed royalty interests, the trial
court awarded Chesapeake no monetary damages and specifically denied its
request for attorney’s fees.  Under these circumstances, we cannot say that the
court abused its discretion by rendering judgment that Chesapeake take
nothing.  Accordingly, we overrule Chesapeake’s first issue.

Royalties Held in Suspense

            Chesapeake contends in its fifth issue
that the court erred by ordering it to pay all royalty monies held in suspense
to Phil, Jr. and not just those royalty monies attributable to the interests in
dispute in this lawsuit.  Chesapeake’s complaint raises two sub-issues: (1)
whether Phil, Jr. sought such relief in his summary-judgment motion; and (2) if
so, whether the court improperly ordered Chesapeake to pay more monies to Phil,
Jr. than he is entitled to.

            In his summary-judgment motion, Phil,
Jr. sought a declaration that he is “the sole owner of the disputed two non-participating
royalty interests” and “such other further relief at law or in equity as this
court deems proper.”  The trial court declared Phil, Jr. to be the owner of the
disputed interests.

            The parties filed a Rule 11 agreement
in connection with Chesapeake’s interpleader action.  In this agreement, the
parties stated that Chesapeake had “unconditionally tendered the appropriate
funds in the Registry of the Court” and that it would not be necessary for Chesapeake “to actually deposit any funds into the Registry.”  See Heggy v. Am. Trading
Employee Ret. Account Plan, 123 S.W.3d 770, 776 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  The parties further agreed that the funds
tendered were those “representing production attributable to the interests which
are the subject matter of this suit.”

            Funds held in suspense in this manner
are for all intents and purposes the same as funds deposited in the registry of
a court.  Such funds can be disbursed only by order of the court.  See
Eikenburg v. Webb, 880 S.W.2d 781, 782 (Tex. App.—Houston [1st Dist.] 1993,
no writ); see also Tex. Loc. Gov’t
Code Ann. § 117.121(a) (Vernon 1999).  Therefore, to conclude this
litigation by final judgment, it was incumbent upon the court to decree to whom
the suspended funds should be disbursed.

            There is nothing in the record to
suggest that Chesapeake held in suspense any funds other than those
attributable to the royalty interests in dispute.  In fact, the Rule 11
agreement seems to expressly confirm that these were the only funds held in
suspense.  Pursuant to Phil, Jr.’s summary-judgment motion, the court
determined that he is the sole owner of the disputed interests, and because
that motion included a request for general relief, we cannot say that the court
abused its discretion by ordering Chesapeake to deliver all suspended funds
directly to Phil, Jr.  Accordingly, we overrule Chesapeake’s fifth issue.

Ad Litem Attorney’s Fees

            Chesapeake’s second, third and fourth
issues challenge the court’s decision to require Chesapeake to pay the
attorney’s fees of the attorney ad litem appointed to represent McCuen.  In
particular, Chesapeake contends: (a) the court abused its discretion by
requiring Chesapeake to pay McCuen’s attorney’s fees; (b) there is no evidence
to support the amount of trial attorney’s fees awarded in the judgment; and (c)
the court abused its discretion by awarding appellate attorney’s fees because
proper notice was not given of the hearing for such fees.

            Before addressing Chesapeake’s issues,
we first note that the trial court was required by Rule of Civil Procedure 244
to pay McCuen’s counsel “a reasonable fee for his services” and to tax those
fees “as part of the costs.”  Tex. R.
Civ. P. 244;[15] Cahill
v. Lyda, 826 S.W.2d 932, 933 (Tex. 1992) (per curiam).

            In its second issue, Chesapeake
contends that the court abused its discretion by requiring Chesapeake to pay
McCuen’s attorney’s fees because: (1) the court failed to state good cause for
awarding attorney’s fees to a non-prevailing party as required by Rules of
Civil Procedure 131 and 141; and (2) McCuen did not cite the Uniform
Declaratory Judgments Act (Chapter 37 of the Civil Practice and Remedies Code)
in his summary-judgment motion as a basis for an attorney’s fee award.

            Read together, Rules 131 and 141 in
essence require a court to state on the record why it has chosen to allow a
non-prevailing party to recover costs (including attorney’s fees).[16]
 Tex. R. Civ. P. 131, 141; see
Furr’s Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 376-77 (Tex. 2001); Marion v. Davis, 106 S.W.3d 860, 868-69 (Tex. App.—Dallas 2003, pet.
denied).  The courts of appeals are divided on the question of whether this
“good cause requirement” applies in declaratory judgment actions.  Compare
Marion, 106 S.W.3d at 868-69 (under Rules 131 and 141, award of attorney’s
fees to non-prevailing party in declaratory judgment action must be supported
by statement of good cause on the record), with W. Beach Marina, Ltd. v.
Erdeljac, 94 S.W.3d 248, 270 (Tex. App.—Austin 2002, no pet.) (good cause
requirement of Rules 131 and 141 does not apply in declaratory judgment action). 
Nevertheless, because Chesapeake did not raise this complaint in the trial
court, it has not preserved this issue for appellate review.[17]

           Chesapeake also complains
that the attorney’s fees award cannot be based on the Uniform Declaratory
Judgments Act because McCuen did not cite this statute as a basis for relief in
his summary-judgment motion.  However, McCuen did not request an award of
attorney’s fees in his summary-judgment motion.  Rather, he filed a pretrial
motion for attorney’s fees.[18]  At
the conclusion of the summary-judgment hearing, McCuen offered in evidence
counsel’s affidavit providing an itemized listing of his trial attorney’s
fees.  Chesapeake’s counsel stated on the record, “whatever the Court
determines to be the appropriate amount of attorney’s fees I won’t object to
that.”  Chesapeake’s counsel and Ettinger’s counsel both affirmatively stated
that they had no objection to the admission in evidence of the affidavit, and
the court admitted it without objection.

           From the record, it appears
that the merits of the lawsuit were resolved by summary judgment, while the
attorney’s fees issues were resolved in a bench trial.  See, e.g., Doncaster
v. Hernaiz, 161 S.W.3d 594, 600-01 (Tex. App.—San Antonio 2005, no pet.); Cadle
Co. v. Harvey, 46 S.W.3d 282, 284 (Tex. App.—Fort Worth 2001, pet.
denied).  During the course of this brief trial, Ettinger’s counsel reminded
the court that this suit was brought under the Declaratory Judgments Act which
authorizes a court to (in counsel’s words) “apportion attorney’s fees as the
Court sees fit.”  And in a post-judgment hearing, Chesapeake’s counsel referred
to the Declaratory Judgments Act as the applicable law in determining whether
to award appellate attorney’s fees to McCuen.

           Because the court awarded
the attorney’s fees in a bench trial and not as part of the summary-judgment
proceedings, it is irrelevant that McCuen did not include a request for
attorney’s fees in his summary-judgment motion.  Chesapeake brought this suit
under the Declaratory Judgments Act, and thus the trial court was authorized to
award such reasonable and necessary attorney’s fees as the court deemed
“equitable and just.”  Tex. Civ. Prac.
& Rem. Code Ann. § 37.009 (Vernon 1997); see GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d
305, 311-12 (Tex. 2006).

           For these reasons, we
overrule Chesapeake’s second issue.

            Chesapeake contends in its third issue
that there is no evidence to support the amount of trial attorney’s fees
awarded in the judgment.  However, McCuen offered in evidence counsel’s
affidavit providing an itemized listing of his trial attorney’s fees.  The
affidavit recites that the attorney ad litem had incurred $14,748.75 in trial
attorney’s fees on McCuen’s behalf.  The judgment requires Chesapeake to pay $14,748.75
in trial attorney’s fees.

            McCuen offered documentary evidence to
support his request for trial attorney’s fees, and Chesapeake stated on the
record that it had “no objection” to this evidence and that it would not object
to “whatever the Court determine[d] to be the appropriate amount of attorney’s
fees.”  This evidence is such as would “enable [a] reasonable and fair-minded [trier
of fact] to reach the verdict under review.”  See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); see also Matis v. Golden, 228 S.W.3d 301,
305 (Tex. App.—Waco 2007, no pet.) (applying Keller no-evidence standard
to findings made in bench trial); Keith v. Keith, 221 S.W.3d 156, 172
(Tex. App.—Houston [1st Dist.] 2006, no pet.) (rejecting no-evidence challenge
to attorney’s fee award where opposing party stated on record “that she had no
issue with [counsel’s] credentials, rate, or amount of time spent on the case”). 
Accordingly, we overrule Chesapeake’s third issue.

            Chesapeake contends in its fourth
issue that the court erred by granting the attorney ad litem’s appellate
attorney’s fees because proper notice of the hearing on those fees was not
given.  Before we address the notice issue, however, we must determine whether
the trial court had jurisdiction to award appellate attorney’s fees because the
motion seeking such fees was filed more than thirty days after the initial
judgment was signed.  See In re Dickason, 987 S.W.2d 570, 571 (Tex. 1998) (per curiam) (order granting new trial after expiration of plenary power is void
for want of jurisdiction); Custom Corporates, Inc. v. Sec. Storage, Inc.,
207 S.W.3d 835, 838 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (“Orders
issued outside of a trial court’s plenary power are typically void”).

            The trial court signed its “Final
Summary Judgment” on September 8, 2006.  McCuen filed a motion for new trial on
October 5, complaining in particular of the court’s rejection of his parol gift
theory.  On Tuesday, October 10,[19]
McCuen filed a Motion for Leave to File Supplemental Evidence to Summary
Judgment and Motion to Modify.  In this motion, McCuen sought leave of court to
present additional evidence regarding his appellate attorney’s fees and a
modification of the judgment to award those fees.  Insofar as this motion
constituted a motion to modify the judgment, it was untimely under Rule of
Civil Procedure 329b because it was filed thirty-two days after the date the
judgment was signed.  See Tex. R.
Civ. P. 329b(a), (g).  Insofar as this motion constituted a motion to
present additional evidence under Rule of Civil Procedure 270, that rule
provides in pertinent part a trial court may grant a motion to reopen “at any
time.”  Id. 270.  And there are cases affirming a trial court’s decision
to reopen the evidence even after rendition of judgment.  See, e.g.,
McCarthy v. George, 623 S.W.2d 772, 776 (Tex. App.—Fort Worth 1981, writ
ref’d n.r.e.) (evidence reopened 33 days after trial); Harrison v. Bailey,
260 S.W.2d 702, 704-05 (Tex. Civ. App.—Eastland 1953, no writ) (evidence
reopened at unspecified time after rendition of judgment).

            McCuen’s timely-filed motion for new
trial extended the trial court’s plenary power.  See Tex. R. Civ. P. 329b(e); In re J.L.,
163 S.W.3d 79, 82 (Tex. 2005).  As the Supreme Court has explained, a trial
court may in its discretion consider the grounds raised in an untimely motion
to modify if the court’s plenary power has already been extended by a timely-filed
post-judgment motion.  See Moritz v. Preiss, 121 S.W.3d 715, 720 (Tex. 2003).

If the trial court ignores the tardy motion, it is
ineffectual for any purpose.  The court, however, may look to the motion for
guidance in the exercise of its inherent power and acting before its plenary
power has expired, may grant a [modification]; but if the court denies [the
requested modification], the belated motion is a nullity and supplies no basis
for consideration upon appeal of grounds which were required to be set forth in
a timely motion.

 

Id.
(quoting Kalteyer v. Sneed, 837 S.W.2d 848, 851 (Tex. App.—Austin 1992,
no writ)).[20]

            Here, the trial court granted McCuen’s
motion for leave to file additional evidence, which we have characterized as a
motion to reopen under Rule 270.

In determining whether to permit additional
evidence under Rule 270, a court should consider: (1) the movant’s diligence in
obtaining the additional evidence; (2) the decisiveness of this evidence; (3)
whether the reception of the evidence could cause any undue delay; and (4)
whether the granting of the motion could cause any injustice.  Naguib v.
Naguib, 137 S.W.3d 367, 373 (Tex. App.—Dallas 2004, pet. denied); Lopez
v. Lopez, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi 2001, no pet.).  “The
trial court should exercise its discretion liberally ‘in the interest of
permitting both sides to fully develop the case in the interest of justice.’”  Lopez,
55 S.W.3d at 201 (quoting Word of Faith World Outreach Ctr. Church, Inc. v.
Oechsner, 669 S.W.2d 364, 367 (Tex. App.—Dallas 1984, no writ)).

 

Saunders v. Lee, 180 S.W.3d 742, 745 (Tex. App.—Waco 2005, no pet.).

            It can be argued that McCuen failed to
exercise due diligence in presenting evidence regarding appellate attorney’s
fees.  However, the remaining three factors support the court’s decision to
permit additional evidence.  Therefore, we cannot say that the court abused its
discretion by permitting McCuen to present additional evidence on this issue,
and because McCuen’s motion for new trial was timely filed, the court was still
acting within its plenary power when it permitted McCuen to present additional
evidence.[21]

            Chesapeake argues that McCuen failed
to give twenty-one days’ notice of the hearing on his request for appellate
attorney’s fees as required by Rule of Civil Procedure 166a for
summary-judgment hearings.  See Tex.
R. Civ. P. 166a(c).  Chesapeake also contends that McCuen’s notice does
not comply with Rule 21a because it does not reflect that the other parties
were notified of the hearing.  Id. 21a.

            We have already explained that the
court awarded McCuen’s attorney’s fees during the course of a bench trial and
not as part of the summary-judgment proceedings.  Therefore, the 21-day notice
requirement of Rule 166a(c) does not apply.  More importantly, a party must
object to a lack of notice in the trial court to preserve that issue for
appellate review.  See Tex. R.
App. P. 33.1(a)(1); Stallworth v. Stallworth, 201 S.W.3d 338, 346
(Tex. App.—Dallas 2006, no pet.); Emmett Props., Inc. v. Halliburton Energy
Servs., Inc., 167 S.W.3d 365, 372-73 (Tex. App.—Houston [14th Dist.] 2005,
pet. denied).  Chesapeake did not object to any failure on McCuen’s part to
give proper notice.  Accordingly, we overrule Chesapeake’s fourth issue.

Ettinger’s Attorney’s Fees

            Ettinger contends in her fourth issue
that the court abused its discretion by denying her request for attorney’s fees
because: (1) as demonstrated by the issues presented, she should have been one
of the prevailing parties; (2) it is undisputed that she incurred attorney’s
fees; (3) the court awarded McCuen’s attorney’s fees; and (4) Phil, Jr. has
caused Ettinger to incur attorney’s fees by his pursuit of the disputed royalty
interests, “even though he acknowledged in his affidavit that Mary Huey owned
the royalty interests.”

            Regarding the first contention, we
have already determined that Ettinger’s issues are without merit, and thus she
is not a prevailing party.  Regarding the fourth contention, Ettinger
mischaracterizes the statements contained in Phil, Jr.’s affidavit.  Phil, Jr.
stated in one paragraph of the affidavit that “the two brothers and their wives
together sold the 210-acre ‘West Farm’ to [the Dunsons].”  In the next
paragraph, Phil, Jr. states, “In the conveyance to the Dunsons, again Mary
co-signed with her husband as grantors, even though this ‘West Farm’ was Paul’s
separate property  .  .  .  .  I don’t know why Mary was asked to sign.” 
Nowhere in the affidavit does Phil, Jr. state that Mary owned the disputed
interests.

            Under the Declaratory Judgments Act, a
court may award “reasonable and necessary attorney’s fees as are equitable and
just.”  Tex. Civ. Prac. & Rem. Code
Ann. § 37.009; Ridge Oil Co. v. Guinn Invs., Inc., 148 S.W.3d 143,
161 (Tex. 2004).  We assume without deciding that the attorney’s fees sought by
Ettinger are “reasonable and necessary.”  Thus, the sole issue for decision is
whether the court abused its discretion by determining that it would not be “equitable
and just” to award Ettinger her attorney’s fees.  See Ridge Oil, 148
S.W.3d at 161 (“the equitable and just requirements are questions of law for
the trial court to decide”) (citing Bocquet v. Herring, 972 S.W.2d 19,
21 (Tex. 1998)).

            Here, the court had before it four
parties (and/or groups of parties) represented by counsel.  Three of those
parties retained their own counsel to represent them in this proceeding, and
there is nothing in the record to indicate that any of these parties is
indigent.  The court, as required by Rule 244, ordered that McCuen’s counsel be
paid his attorney’s fees and taxed those fees as part of the costs.  See
Tex. R. Civ. P. 244; Cahill,
826 S.W.2d at 933.  The court may have determined that every other party to the
litigation should pay their own attorney’s fees, but the court had no
discretion with regard to McCuen’s attorney’s fees.  From the record, we cannot
say that the court abused its discretion by denying Ettinger’s request for
attorney’s fees.  Accordingly, we overrule Ettinger’s fourth issue.

Conclusion

The trial court properly determined that Phil, Jr.
holds title to the disputed royalty interests because his father inherited
those interests from Paul under the terms of Paul’s will.  The trial court did
not abuse its discretion by requiring Chesapeake to pay the ad litem’s
attorney’s fees, nor did the court abuse its discretion by denying Ettinger’s
request for attorney’s fees.  Therefore, we affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed April 30, 2008

[CV06]









[1]
              Much of the background facts
come from a joint stipulation the parties made.





[2]
              The residuary devisees named
in Mary’s will are: Joseph W. McCuen (9%), Donald H. and Ellen Hill McCuen
(9%), Edwin and Louise McCuen Buck (9%), Edna McCuen (9%), Phil, Jr. (9%),
Phil, Sr. and wife Homerette or the survivor of them (15%), Mildred Schultz
McCuen (4%), Frederick H. McCuen (3%), John Timothy McCuen (3%), Margaret
McCuen Klopfenstein (3%), Lois McCuen Baldwin (3%), Phyllis McCuen Powers (3%),
Patricia McCuen (3%), Mary Ellen McCuen Stieler (3%), Donald H. McCuen, II
(3%), Douglas Buck (3%), Sarah Buck Lawrence (3%), Evelyn Olson (3%), Joan
Elizabeth Hooker (0.75%), Nellie S. Borntraeger (0.75%), Mary U. Stansel
(0.75%), and Minnie Gobel (0.75%).

 





[3]
              The Ettinger defendants
include: Sarah Ettinger, Douglas Buck, Carol McCuen, Margaret McCuen Precilio,
Phyllis McCuen Powers, and Mary Ann McCuen Culberson.

 





[4]
              The McCuen defendants include:
Joseph W. McCuen, Donald H. McCuen, Ellen McCuen, Louise McCuen Buck, Edwin
Buck, Edna McCuen, Mildred Schultz McCuen, Frederick H. McCuen, John Timothy
McCuen, Margaret McCuen Klopfenstein, Lois McCuen Baldwin, Patricia McCuen,
Mary Ellen McCuen Stieler, Donald H. McCuen, II, Evelyn Olson, Nellie S.
Borntraeger, Mary U. Stansel, Minnie Gobel, and their heirs, successors, and
assigns.





[5]
              Because no preservation is
required, we need not determine whether the trial court implicitly overruled
Ettinger’s objection.  Cf. Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.,
127 S.W.3d 235, 240-41 (Tex. App.—Waco 2003, no pet.).





[6]
              The former article 1288 of the
Revised Civil Statutes of 1925 provided:

 

                No estate of
inheritance or freehold, or for a term of more than one year, in lands and
tenements, shall be conveyed from one to another, unless the conveyance be
declared by an instrument in writing, subscribed and delivered by the party
disposing of the same, or by his agent thereunto authorized by writing.

 

Act effective Sept. 1, 1925, 39th Leg., R.S., § 1, art. 1288
(repealed 1983) (current version at Tex.
Prop. Code Ann. § 5.021 (Vernon 2003)).

 

 





[7]
              A trial court may in its
discretion sua sponte take judicial notice of the other state’s law, but
it is not required to do so.  See Tex.
R. Evid. 202; Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759,
769 (Tex. App.—Corpus Christi 1999, pet. denied); Olin Guy Wellborn, III, Judicial
Notice Under Article II of the Texas Rules of Evidence, 19 St. Mary’s L.J. 1, 27 (1987).





[8]
              In its present form, section
37A applies to only those disclaimers made “on or after September 1, 1977.”  Tex. Prob. Code Ann. § 37A(a) (Vernon Supp. 2007).  This particular date was apparently selected to coincide with the 1977
amendments to section 37A and has been retained ever since.  See Act of
May 23, 1977, 65th Leg., R.S., ch. 769, § 1, 1977 Tex. Gen. Laws 1918 (amended
1979).

 





[9]
              The same holds true in Alabama.  See, e.g., Trustees of Cumberland Univ. v. Caldwell, 203 Ala. 590, 84 So.
846, 851 (1919) (op. on reh’g).

 





[10]
            The Supreme Court cited the
Jhong annotation as authority in Badouh.  See Badouh v. Hale, 22
S.W.3d 392, 396 (Tex. 2000).

 





[11]
            Even if these interests had been
disclaimed by Phil, Sr. as McCuen and Ettinger claim, they would have passed to
Phil, Jr. as Phil, Sr.’s sole “surviving issue” under the terms of Paul’s
will.  See Tex. Prob. Code Ann. § 37A(c) (Vernon Supp. 2007) (“Unless
the decedent’s will provides otherwise, the property subject to the disclaimer
shall pass as if the person disclaiming or on whose behalf a disclaimer is made
had predeceased the decedent”).





[12]
            Although Professors Woodward and
Smith are generally regarded as the authors of this treatise, they acknowledge
in the preface that Ione Stumberg and W.W. Gibson, Jr. each authored one
chapter.  17 M.K. Woodward & Ernest
E. Smith, III, Preface to
Texas Practice: Probate and Decedents’ Estates v (1971).  We acknowledge
Stumberg’s authorship because she wrote Chapter 13 on foreign wills.  Id. ch. 13, at 317.





[13]
            See also Texas Probate
Code, 54th Leg., R.S., ch. 55, § 48, 1955 Tex. Gen. Laws 88, 104 (amended 1971)
(current version at Tex. Prob. Code Ann.
§ 48 (Vernon Supp. 2007)); Wells v. Gray, 241 S.W.2d 183, 185 (Tex. Civ.
App.—San Antonio 1951, writ ref’d).  It should also be noted that probate
courts ordinarily have virtually exclusive jurisdiction to determine heirship
disputes because a determination of heirship is statutorily included among
those matters “appertaining” or “incident” to an estate.  See Tex. Prob. Code Ann. § 5A (Vernon Supp. 2007).  However, “[i]n a non-probate matter, the district court may assume
jurisdiction and determine the heirs of the decedent as long as there is no
probate proceeding pending in the county court.”  Jansen v. Fitzpatrick,
14 S.W.3d 426, 432 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

  





[14]
            When Paul conveyed his undivided
1/2 interest in Tract 1 to Phil, Sr., Paul reserved to himself an undivided
1/16 non-participating royalty interest in Tract 1.  Conversely, at the time of
the conveyance of Tract 2 to the Dunsons, Paul and Phil, Sr. each owned an
undivided 1/2 interest in Tract 1, and they collectively reserved unto
themselves an undivided 1/16 non-participating royalty interest.  Thus, Paul
and Phil, Sr. each held an undivided 1/32 non-participating royalty interest in
Tract 2 after the Dunson conveyance.





[15]
            Rule 244 provides:

 

                Where service has been made by
publication, and no answer has been filed nor appearance entered within the
prescribed time, the court shall appoint an attorney to defend the suit in
behalf of the defendant, and judgment shall be rendered as in other cases; but,
in every such case a statement of the evidence, approved and signed by the
judge, shall be filed with the papers of the cause as a part of the record
thereof.  The court shall allow such attorney a reasonable fee for his
services, to be taxed as part of the costs.

 

Tex. R. Civ. P. 244.

 





[16]
         Rule 131 provides, “The successful party to a suit shall
recover of his adversary all costs incurred therein, except where otherwise
provided.”  Tex. R. Civ. P. 131. 
Rule 141 provides, “The court may, for good cause, to be stated on the record,
adjudge the costs otherwise than as provided by law or these rules.”  Id. 141.

 





[17]
            Chesapeake’s motion for new
trial complains in pertinent part that “[t]he trial court improperly assessed
Plaintiff Chesapeake Exploration Limited Partnership will all attorney ad litem
costs.”  This is, at best, a general objection to the attorney’s fee award.  In
any event, it is not sufficiently specific to preserve this issue for appellate
review.  See Tex. R. App. P. 33.1(a)(1);
Gerdes v. Kennamer, 155 S.W.3d 523, 532 (Tex. App.—Corpus Christi 2004,
pet. denied) (“the allegations in a motion for new trial must be sufficiently
specific to enable the trial court to understand what the movant alleges was
error.”).

 





[18]
            In similar fashion, Chesapeake filed a motion for attorney’s fees 10 days after the summary-judgment hearing.  Chesapeake supported this motion with an affidavit of counsel filed on the same date the
court signed the initial judgment, which the court designated as its “Final
Summary Judgment.”  Conversely, Ettinger sought attorney’s fees in her
summary-judgment motion, and Phil, Jr. “reserve[d] the right” to pursue
appellate attorney’s fees in his motion.

 





[19]
            The certificate of service in
this pleading bears the same date so there is nothing to suggest that the
“mailbox rule” would apply.  See Tex.
R. Civ. P. 5.





[20]
            The original quotation is from
McDonald’s Texas Civil Practice.  See Kalteyer v. Sneed, 837
S.W.2d 848, 851 (Tex. App.—Austin 1992, no writ) (quoting Homart Dev. Co. v.
Blanton, 755 S.W.2d 158, 160 (Tex. App.—Houston [1st Dist.] 1988, orig.
proceeding) (quoting 4 Roy W. McDonald,
Texas Civil Practice § 18.06.02, at 287 (Frank W. Elliott ed., rev. ed.
1984))); see also 5 Roy W.
McDonald & Elaine A. Carlson, Texas Civil Practice § 28.10, at 291
(2d ed. 1999).

 





[21]
            The court signed both the order
granting McCuen leave to file additional evidence and the “Amended Final
Summary Judgment” on November 14, 2006, well within 75 days after the September
8 judgment was signed.  See Lane Bank Equip. Co. v. Smith So. Equip., Inc.,
10 S.W.3d 308, 310 (Tex. 2000) (timely-filed motion for new trial extends
court’s plenary power up to 75 days); Malone v. Hampton, 182 S.W.3d 465,
468 (Tex. App.—Dallas 2006, no pet.) (same).