Ex parte James Allen **BARNES**, Relator.

No. 18196.

Court of Civil Appeals of Texas, Fort Worth.

May 17, 1979.

Miteff, Carter, Finney & Williams, and Meto Miteff, Fort Worth, for relator.

Donald L. Prager, Fort Worth, for Geraldine Mae Barnes.

## OPINION

SPURLOCK, Justice.

This is an original habeas corpus proceeding in which James Barnes seeks relief from incarceration pursuant to a commitment order issued after he was held in contempt of the 325th district court. We granted his motion for leave to file an application for a writ of habeas corpus and petition for relief. We granted a writ of habeas corpus returnable to this court on May 3, 1979 when a hearing was held on whether relief should be granted. The relator was released on bond pending the hearing. The issue is whether the relator's commitment is proper where the contemptuous conduct occurred prior to the signing of the temporary injunction which was allegedly violated, and where the trial court found that the relator had actual notice of the injunction before engaging in the conduct.

The relator is discharged.

Barnes and his wife were obtaining a divorce in Tarrant County. After a temporary restraining order was issued on January 23, 1979, a hearing was held on January 29, 1979, on a temporary injunction. The parties appeared at the hearing in person and by attorney. They agreed to some of the terms of the injunction which was granted on the date of the hearing. However, the temporary injunction was not reduced to writing and signed until March 19, 1979.

The injunction in pertinent part provides as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that each party hereto is ordered or restrained as the case may be from:

" . . .

"3. Coming around, about or in the presence of each other, their place of residence, place of employment or where either may be and further restraining them from communicating with each other directly, via their friends, neighbors or acquaintances or by telephone, letter or other means of communication in any manner whatsoever."

On March 11, 1979, eight days before the injunction was signed, Barnes and his wife happened to meet at a nightclub. There is no evidence in the record that this meeting was planned. However, it does appear that both parties consented to communicating with each other. They talked, drank liquor, and danced together at the nightclub. Later in preparing to leave the nightclub the parties discussed the transfer of possession of certain items of property contemplated by the temporary injunction. Mrs. Barnes accepted Barnes's invitation to come to his residence to pick up some of the property.

While at Barnes's residence the couple encountered a third person described to us as "Barnes's girlfriend". An altercation ensued resulting in Barnes striking Mrs. Barnes in the face and breaking her nose. Mrs. Barnes claims Barnes intentionally assaulted her by hitting her with his fist. Barnes's version is that in the struggle he accidentally struck her with his elbow.

Mrs. Barnes filed a motion for contempt and after a show cause hearing the trial court held Barnes in contempt for "the willful violation of a temporary injunction in that James Allen Barnes communicated directly with petitioner by striking her in the

nose. The court is also of the opinion that respondent had actual notice of being restrained from doing petitioner physical harm". He was then committed to jail.

In claiming that he is illegally incarcerated, Barnes advances our recent decision in *Ex Parte Rodriguez*, 568 S.W.2d 894 (Tex.Civ.App.—Fort Worth 1978, no writ). There we held that the relator was improperly committed to jail because the contemptuous conduct occurred before the temporary restraining order was signed. While *Rodriguez* may apply, we note there is a ready basis for distinguishing this case from the facts of *Rodriguez*. Here the trial court was well aware that the conduct occurred before the injunction was signed. The court made the express finding that the relator had actual notice of the injunction prior to the time it was reduced to writing and signed, and prior to the conduct which was held contemptuous. As a general rule a judgment is effective at the time it is rendered. Usually rendition can occur when an oral pronouncement is made from the bench announcing the court's decision. Sometimes if no oral pronouncement is made a judgment is rendered when it has been reduced to writing and signed. Thus the rendition of a judgment and the signing of the written memorandum thereof is not necessarily the same.

Applying these well settled rules to temporary injunctions, there is no authority for the proposition that contempt would be proper where the court orally granted an injunction and the conduct took place before the written memorandum was signed. *Ex Parte Stone*, 72 S.W. 1000 (Tex. Crim.App.1903). An oral order of temporary injunction is just as effective as the signing of a written order. However, it is the well settled rule regarding contempt that the order or injunction which is violated must be clear and sufficiently specific to give the actor notice that he is to do or refrain from doing a given act. Therefore, it follows that an oral order of an injunction to be enforceable by contempt must be just as clear and specific as a written order of an injunction.

Because even constructive contempt, such as in this case, is criminal in nature, it is our opinion that the party defending the order of commitment bears the burden of showing that the relator had actual notice of the injunction by oral pronouncement from the bench, and that the trial court's oral rendition was clear and sufficiently specific. From the record in this case it does not appear that such a showing was made. There is no evidence of what the trial judge actually said or what terms, if any, he announced from the bench. While it is true that the parties had agreed to some of the terms of the injunction in this case, it is the injunction as ordered by the court and not the agreement of the parties which is enforceable by contempt.

In reaching this decision we note that the injunction restrained the parties from communicating with one another. Barnes was held in contempt for communicating with his wife by striking her in the nose. However, the trial court found that he had actual notice of being restrained from doing her physical harm. While we certainly do not condone physical violence under the facts here, from the evidence presented Barnes simply was not restrained by the 325th district court from doing physical violence. We assume without deciding that Mrs. Barnes has other viable remedies for her injury.

Even if the trial court's oral rendition had been shown to be clear and sufficiently specific it is our opinion that Mrs. Barnes waived any remedy through contempt. We note that she consented to and actually engaged in communication with Barnes. Further she voluntarily accepted his offer to go to his residence. Therefore, she cannot now assert a claim of contempt merely because she did not appreciate the communication she received.

Because there was no showing that the oral rendition of the court's order of the temporary injunction was clear and sufficiently specific and because the movant for contempt waived her right to assert it we find that the relator was improperly held in

contempt and incarcerated. Therefore, the relator should not be liable for any of the attorney's fees he was ordered to pay pursuant to the order of contempt and further he is not liable for any of the costs of the contempt proceeding in the trial court.

The relator is ordered discharged from custody.