NO. 07-07-0275-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 12, 2008
_____

IN THE GUARDIANSHIP OF
MARY JANE OLIVARES, AN INCAPACITATED PERSON
_____

FROM THE PROBATE COURT NO. 1  OF BEXAR COUNTY;

NO. 2005-PC-3671; HON. POLLY JACKSON SPENCER, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Dennis Olivares, *pro se,* appeals from an order granting 1) a motion in limine wherein he was barred from participating in a guardianship proceeding he initiated, 2) an application requiring the payment of money as security for costs, and 3) a temporary injunction.  The guardianship proceeding he initiated involved his mother, Mary Jane Olivares.  He sought to be appointed her guardian.  The motions that the trial court granted were filed by David A. Wise (Wise), the attorney ad litem for Mrs. Olivares.  We affirm, reverse, and dismiss in part.

*Motion in Limine*

Via the motion in limine, Wise asserted that Olivares lacked standing to participate in the guardianship proceeding due to an adverse interest.  The latter consisted of owing

his mother and her estate substantial sums of money. The trial court granted the motion, which decision Olivares now attacks.[1] We overrule his complaint.

Whether a party has standing to participate in a guardianship proceeding is a question of law. We review the matter *de novo*. *Cleaver v. George Staton Co.,* 908 S.W.2d 468, 472 (Tex. App.–Tyler 1995, writ denied); *Betts v. Brown,* No. 14-99–00619-CV, 2001 Tex. App. LEXIS 329 at *7-8 (Tex. App.–Houston [14th Dist.] January 18, 2001, no pet.).

Next, § 642 of the Probate Code provides that a person who has an interest adverse to a proposed ward may not 1) file an application to create a guardianship for that person, 2) contest the creation of a guardianship for that person, 3) contest the appointment of a person as a guardian of the person or the estate or both, or 4) contest an application for complete restoration of a ward's capacity or modification of a ward's guardianship. TEX. PROB. CODE ANN. §642(b) (Vernon 2003). Olivares' attack on the trial court's decision has two components. First, he contends that his opponent failed to prove that he will never pay the debt to his mother. Then, he believes that owing money to his mother does not constitute an adverse interest sufficient to prevent him from participating in the guardianship proceeding. We disagree given the record before us.

The amount of money that he owes his mother approximates $80,000. The exact sum due is unknown because he tracks his loans "loosely" and "the nature of the repayment is somewhat far off." Moreover, he has no job (though he is apparently well-

---

[1]The trial court's order states that Olivares does not have standing to "file or amend any application to create a guardianship for the Proposed Ward; . . . does not have standing . . . to contest the creation of a guardianship for the Proposed Ward; and, . . . does not have standing in this cause to contest the appointment of [his sister Rebecca], or any other person, as the guardian of the person or of the estate of the Proposed Ward."

educated and highly skilled) and lives in his mother's house. She lives elsewhere and, according to him, has a finite estate. Yet, her assets have been used by him to pay for his credit cards, his attorneys, and a lawsuit he initiated against a local municipality, among other things. Simply put, loans from Mrs. Olivares' assets support him, as he acknowledged. Most troubling though is that many of the loans and expenditures from that finite estate were made after he secured from his mother a power of attorney to act on her behalf. And, as mentioned above, little to no evidence appears of record illustrating that repayment will be forthcoming in the near future. This is of import since under the power of attorney, his debts will be forgiven upon the death of his mother.

So what we have here is evidence from which a factfinder could reasonably conclude that though Olivares has the ability to earn wages and care for himself, he opted to live off his potentially incapacitated mother and expend her finite estate for his own benefit. More importantly, much of this self-dealing occurred after he became her fiduciary via a power of attorney. As her fiduciary, he was obligated to place her interests above his own. *Chapman Children's Trust v. Porter & Hedges, L.L.P.,* 32 S.W.3d 429, 439 (Tex. App.–Houston [14th Dist.] 2000, pet. denied); *accord, National Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.,* 235 S.W.3d 695, 700 (Tex. 2007) (stating that the attorney-in-fact is an agent and subject to a duty to act solely for the benefit of the principal in all matters connected with the agency). A fiduciary, like Olivares, is also obligated to pursue a course of good faith, fair dealing, honesty, and strict accountability. *Avary v. Bank of America, N.A.,* 72 S.W.3d 779, 791 (Tex. App.–Dallas 2002, pet. denied). Given the evidence of his self-dealing, we cannot hold that the trial court erred in determining that Olivares had an

3

interest sufficiently adverse to his mother to bar him from participating in her guardianship proceeding.[2]

*Temporary Injunction*

Next, Olivares contends that the trial court erred in granting a temporary restraining order and a temporary injunction enjoining him from using the power of attorney or exercising any dominion or control over her property when there was no evidence of irreparable harm to her estate. We overrule the issues.

First, a temporary restraining order is non-appealable. *In re Office of the Attorney General,* 257 S.W.3d 695, 698 (Tex. 2008). Thus, we cannot hear complaints regarding its issuance.

Second, we find no record of a written order for injunction being signed by the court. Moreover, both parties agree that one was not. Instead, the trial court simply stated that the motion seeking injunctive relief was "granted." *See Ex parte Barnes,* 581 S.W.2d 812, 814 (Tex. Civ. App.–Fort Worth 1979, no writ) (stating that while an oral order for temporary injunction is effective, it must be as clear and specific as a written order). Yet, the specific terms of the decree, the reasons for its issuance, the acts to be enjoined, and the date of the final trial went unmentioned in the oral pronouncement, contrary to Texas Rule of Civil Procedure 683. TEX. R. CIV. P. 683. And, since they were, the purported temporary injunction was and is void. *Qwest Communications Corp. v. AT&T Corp.,* 24 S.W.3d 334, 337 (Tex. 2000).

---

[2] To the extent that Olivares claims on appeal that he was entitled to 45 days notice of the hearing on the motion in limine, we do not find in the record where he raised that matter below. Accordingly, the issue was waived. TEX. R. APP. P. 33.1(a)(1) (stating that to preserve error, one must show that the complaint was made to the trial court by a timely request, objection, or motion).

4

*Order to Pay Costs and Security*

Olivares next complains of the trial court's order directing him to deposit into the court's registry the sum of $8,000 to secure the payment of the court costs and expenses related to the guardianship proceedings. He was ordered to do this without encumbering his mother's estate. We dismiss this issue for the want of jurisdiction.

The order in question was sought and entered pursuant to the authority of §622(b) of the Probate Code. Section 622(b) provides that "[a] person interested in the guardianship or in the welfare of the ward, or an officer of the court, at any time before the trial of an application, complaint, or opposition in relation to a guardianship matter, may obtain from the court, on written motion, an order requiring the person who filed the application, complaint, or opposition to give security for the probable costs of the proceeding." TEX. PROB. CODE ANN. § 622(b) (Vernon 2003). Given its use of the term "probable," the legislature apparently contemplated that the statute would serve to assure payment of costs to be incurred as the suit proceeds to ultimate disposition. And, by requiring one to pay costs that could be incurred while the guardianship action proceeds, it can hardly be said that the directive disposes of the suit or results in the adjudication or resolution of any substantive right or cause of action. Consequently, the order in question is interlocutory and outside of our jurisdiction. *Bozeman v. Kornblit*, 232 S.W.3d 261, 263 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (stating that an order that merely "'sets the stage'" for further resolution is interlocutory and non-appealable); *accord, Brittingham-Sada de Ayala v. Mackie*, 193 S.W.3d 575, 579 (Tex. 2006) (stating that the order there involved

5

was interlocutory because it did not end a phase of the proceedings but rather "set[] the stage for the resolution of all proceedings").

*Laches*

Finally, Olivares argues that the doctrine of laches prohibited the trial court from considering and ruling on the motion in limine, application for temporary injunction, and application for costs and security because they were filed 1.5 years after he initiated the guardianship. We overrule the issue.

Laches is an equitable remedy that prevents a plaintiff from asserting a claim due to the lapse of time. *Brewer v. Nationsbank of Texas, N.A.,* 28 S.W.3d 801, 804 (Tex. App.–Corpus Christi 2000, no pet.). It is generally not available in a suit to enforce a statutory right. *Houston Lighting & Power Co. v. City of Wharton,* 101 S.W.3d 633, 638 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). Moreover, to prevail on it, one must show that 1) his opponent unreasonably delayed in asserting legal or equitable rights, and 2) the delay caused him to, in good faith, change his position. *Caldwell v. Barnes,* 975 S.W.2d 535, 538 (Tex. 1998).

Assuming *arguendo* that laches is applicable to guardianship proceedings and that the 1.5 year delay mentioned by Olivares was unreasonable, Olivares did not illustrate that the delay caused him to change his position to his detriment. Without such a showing, he cannot prevail. *See Trevino v. Trevino,* 64 S.W.3d 166, 173 (Tex. App.–San Antonio 2001, no pet.).

Accordingly, we reverse the oral temporary injunction, dismiss the complaint regarding issuance of the temporary restraining order and the order directing him to pay costs, and affirm the remaining orders of the trial court which were at issue before us.


        Brian Quinn
        Chief Justice