**HOUSTON LIGHTING & POWER COMPANY and Houston Industries Finance, Inc., Appellants,**

v.

**CITY OF WHARTON, City of Pasadena, and City of Galveston, Appellees.**

**No. 01–01–00164–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 27, 2003.

Rehearing Overruled April 24, 2003.

---

B. Daryl Bristow, Baker & Botts L.L.P., Michael M. Wilson, Clements, O'Neill, Pierce, Nickens and Wilson, Diana E. Marshall, Schechter & Marshall, Houston, Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for Appellant.

Levon G. Hovnatanian, Martin, Disiere, Jefferson & Wisdom, L.L.P., John M. O'Quinn, O'Quinn & Laminack, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and JENNINGS.

## OPINION

SAM NUCHIA, Justice.

Appellants, Houston Lighting and Power Company (HL&P) and Houston Industries Finance, Inc., appeal the judgment of the trial court awarding actual damages of $1,175,193.88 to appellees, the cities of Wharton, Pasadena, and Galveston (the Cities), and a total of $13,683,181 in attorneys' fees in this dispute regarding the correct interpretation of franchise-fee agreements between the Cities and HL&P. We reverse the judgment and render a take-nothing judgment.

## BACKGROUND

In 1957, HL&P entered into franchise agreements with Wharton and Galveston and some other cities in its service area.

These agreements provided that these cities would grant to HL&P the right to conduct an electrical lighting and power business within the cities and to use public streets, roads, and easements to erect poles, lines, towers, and other appurtenances necessary for conducting, distributing, and selling electricity within each city. In return, HL&P would pay, as a franchise fee to each of the cities, $500 annually plus "4% of the gross receipts for such year, exclusive of receipts for street lighting, received by [HL&P] from its electrical lighting and power sales for consumption within the corporate limits of the City." To implement the agreement, each of the cities passed an ordinance that set out the franchise agreement and provided that the franchise would continue for a period of 50 years beginning January 1, 1958.

In 1964, Pasadena and HL&P entered into the same agreement, and the Pasadena ordinance, which is virtually identical to the ordinances of Galveston and Wharton, provides that HL&P's franchise would continue for 50 years beginning November 1, 1965.

HL&P, as a regulated utility, is entitled to recover from its customers all of its reasonable and necessary operating expenses. Franchise fees are considered a reasonable and necessary expense. Franchise fees are limited, by statute, to 2% of the gross receipts from the sale of electricity. However, a utility may give its consent to be charged a higher franchise fee.

In 1957, most of the services rendered to individual customers by HL&P were included in calculating the cost of electricity and were billed to the consumers as a part of the cost of electricity. A few miscellaneous charges were not included in the cost of electricity, and the franchise fee was not paid on those charges. Over the years, additional charges were excluded from the calculation of the cost of electrici-

ty. These charges included wholesale sales to other electric utilities, "wheeling" (other utility companies using HL&P's property), customer pay jobs (special services for which a customer was billed directly), pole attachment charges, and miscellaneous services (such as installing a meter or handling a returned check). These exclusions were made at the instigation of the Cities, HL&P, or the Public Utility Commission (the PUC), which was formed in 1975. The reasoning behind these exclusions was that the cost of special services should be borne not by the ratepayer, but by the customer, who benefitted from the service. These exclusions were always subject to approval by the regulatory body—the Cities and, after 1975, the PUC. HL&P, interpreting its agreement to pay "4% of the gross receipts ... received by [HL&P] from its electrical lighting and power sales" to mean the sale of electricity, did not pay the franchise fee on any costs that were excluded from the cost of electricity.

HL&P calculated each consumer's portion of the franchise fee by multiplying the bill for electric service by 4%. In 1984, the City of Houston challenged this method of determining the franchise fee, contending that HL&P should also have collected the franchise fee on the 4% franchise fee, for a total franchise fee of 4.167%[1] of the electrical service bill. Houston sued HL&P to collect the alleged underpayment, and, in 1986, to settle the litigation, HL&P agreed to collect 4.167% as the franchise fee and to collect a surcharge from Houston customers in order to pay the City the unpaid ·fees Houston claimed for the years 1983–85.

In 1987, HL&P offered to make the same adjustment in its payment of franchise fees to Pasadena, provided that HL&P could impose a surcharge to cover any alleged underpayment during 1983–85. Pasadena declined the offer on the basis that Pasadena was attempting to cut taxes for its citizens and that HL&P's proposal was not consistent with that effort.

In 1987, HL&P began "factoring" its accounts. Factoring is a process by which a business sells to another business, at a small discount, its right to collect money before the money is paid. Factoring is a financing tool that reduces the amount of working capital a business needs by reducing the delay between the time of sale and the receipt of payment. HL&P customers are given 20 days from the date of billing to pay their monthly bills. HL&P factored those bills to Houston Industries Finance, Inc., another subsidiary of HL&P's parent company, on the date of billing. HL&P paid franchise fees to the Cities based on HL&P's discounted receipts. Michael Barrett, HL&P's expert, testified that, although fees based on the factored receipts will result in slightly lower franchise fees over time, in the first few years it will produce higher fees. Houston objected at some point to the fee payments based on the factored receipts. As a result, HL&P conducted a break-even analysis to determine the point at which the initial higher payments (which had already been made to Houston) would be offset by the lower payment in subsequent years and determined that the break-even point for Houston was the fourth quarter of 1997. Houston and HL&P agreed that, in 1997, HL&P would resume fee payments based on the amount billed to the customer rather than the amount received by HL&P. HL&P's break-even analysis for the Cities, conducted in 1996, showed that

---

**1.** The record sometimes refers to the total collection of this "fee on fee" as 4.16% and sometimes as 4.167%. The latter percentage is the amount that must be charged to the customer to collect the full "fee on fee."

Galveston and Pasadena had not yet reached the break-even point, but that Wharton had.

In 1996, 50 cities sued HL&P for a declaratory judgment to construe the agreement and for breach of the agreement, fraud, and unjust enrichment. The case was certified as a class action, and that certification was affirmed by this Court.[2] In 2000, the trial court directed a separate trial on the claims of the Cities, which were the class representatives, and reserved a ruling on HL&P's motion to decertify the class. The Cities' claims were tried to a jury,[3] which found that (1) HL&P failed to comply with the franchise agreements with respect to the customer pay jobs, miscellaneous charges, and the discount on the factored accounts; (2) HL&P committed fraud against the Cities after the agreements were signed; and (3) HL&P was unjustly enriched by use of the franchise agreements and the unjust enrichment was "committed" with malice. The jury did not find that HL&P had fraudulently induced the Cities to enter into the franchise agreements.. The jury found that laches applied to the Cities' claims for all seven requested items of recovery. The issue of attorneys' fees was not presented to the jury because HL&P stipulated that a reasonable and necessary attorneys' fee of 40% of damages awarded in the case be awarded to the Cities' counsel.

For breach of the agreement, the jury found actual damages in the amount of $59,239.60 for Wharton, $649,441.20 for Pasadena, and $466,51.08 for Galveston.

The jury found actual damages for fraud in the amount of $148,099 for Wharton, $1,623,603 for Pasadena, and $116,272.70 for Galveston. Actual damages found for unjust enrichment were $4,453.10 for Wharton, $52,743.68 for Pasadena, and $37,588.76 for Galveston. In a separate punitive-damages phase of the trial, the jury found punitive damages against HL&P in the amount of $7,000,000 for each of the Cities for fraud, $2,000,000 in punitive damages against HL&P for each of the Cities for unjust enrichment, and $1,000,000 in punitive damages against Houston Industries Finance, Inc. for each of the Cities for unjust enrichment.

The trial court disregarded the fraud and unjust enrichment findings on the basis that the Cities' claims sounded in contract. The trial court also disregarded the laches finding. In the final judgment, the trial court awarded the contract damages found by the jury, a total of $1,175,193.88, plus attorneys' fees of $13,683,181 as 40% of the damages awarded by the jury.

In its appeal, HL&P challenges the trial court's award of damages for breach of the agreement and the legal and factual sufficiency of the evidence to support the jury's findings of breach of the agreement and damages, the trial court's disregard of the jury's laches finding, and the award of attorneys' fees. The Cities appeal the trial court's disregard of the jury's fraud and unjust enrichment findings and the partial summary judgment ruling that sales taxes are not included in HL&P's "gross receipts."

2. *See Houston Lighting & Power Co. v. Cities of Wharton, Pasadena & Galveston,* No. 01–96–00642–CV, 1996 WL 600931 (Tex.App.-Houston [1st Dist.] Oct. 17, 1996, writ dism'd w.o.j.) (not designated for publication).

3. The trial court rendered a partial summary judgment against the Cities on their claim

that they should also recover unpaid franchise fees on the state sales tax collected by HL&P. The Cities argued that the sales tax was a part of HL&P's gross receipts. In their appeal, the Cities challenge the partial summary judgment.

## DISCUSSION

### Laches

In its third point of error, which is dispositive of both appeals, HL&P contends that the trial court erred in failing to enter judgment for HL&P on all the Cities' claims because of the jury's favorable finding on the affirmative defense of laches, which the trial court disregarded. Question 13 in the jury charge asked:

Do you find that "laches" applies to any City as to any of the following items?

"Laches" applies if a city unreasonably delayed in asserting its rights and HL&P made a good faith change of position to its detriment as a result of the delay.

Answer "Yes" or "No" as to each item for each City.

The jury was then presented with the same seven items for which they had been asked to find actual damages for breach of contract and fraud. The jury answered "Yes" for each of the items for each of the Cities. The trial court disregarded the jury's answers to question 13 on the legal theory that laches does not bar a claim by a unit of government when the governmental unit is performing a governmental function.

A trial court may, upon motion and notice, disregard any jury finding if a legal principle prevents a party from prevailing on its claim or defense. See *Atlantic Richfield Co. v. Misty Prods., Inc.*, 820 S.W.2d 414, 420 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Because the court's ruling was based upon a legal conclusion, we review the court's ruling de

novo. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001).

Laches is usually available as an affirmative defense only in suits in equity. *In re Moragas*, 972 S.W.2d 86, 92 (Tex. App.-Texarkana 1998, orig. proceeding). Laches is generally not available in a suit to enforce a statutory right because, in such a case, the statute of limitations is the appropriate defense. *Id.; see also Graves v. Diehl*, 958 S.W.2d 468, 473 (Tex.App.-Houston [14th Dist.] 1997, no pet.). However, extraordinary circumstances that render enforcement of the claimant's right inequitable may justify the defense of laches. *See Tex. Attorney Gen. v. Daurbigny*, 702 S.W.2d 298, 300–01 (Tex.App.-Houston [1st Dist.] 1985, no writ).

#### a. Statutory Rights and Statutes of Limitations

The Cities have cited several cases to support their argument that laches does not apply in a suit to enforce a statutory right.[4] In each of these cases, the defendant was attempting to use laches to shorten the time for filing a suit that was filed within the applicable statute of limitations. Thus, the cases cited by the Cities do not apply to this case.

In response to the Cities' argument that, because their causes of action are subject to statutes of limitations and their lawsuit is to enforce a statutory right, laches does not apply, HL&P asserts that the relevant statutes of limitations do not apply to claims by incorporated cities. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.061(a) (Vernon Supp.2003). Because section 16.061(a) precludes the operation of statutes of limitations as a bar to the Cities'

---

4. *In re Moragas*, 972 S.W.2d 86 (Tex.App.-Texarkana 1998, orig. proceeding); *Tex. Attorney Gen. v. Daurbigny*, 702 S.W.2d 298 (Tex. App.-Houston [1st Dist.] 1985, no writ); *Ex parte Payne*, 598 S.W.2d 312 (Tex.Civ.App.-

Texarkana 1980, orig. proceeding); *City of Temple v. Brown*, 383 S.W.2d 639 (Tex.Civ. App.-Austin 1964, writ dism'd); *Riggs v. Riggs*, 322 S.W.2d 571 (Tex.Civ.App.-Dallas 1959, no writ).

claims, we hold that laches is an appropriate remedy when a city unreasonably delays asserting its rights.

### b. Governmental or Proprietary Function

■ The Cities also argue that laches cannot bar their claim because laches does not apply to cities when they perform a governmental function. The Cities cite *Ellis v. City of West University Place*, 141 Tex. 608, 175 S.W.2d 396 (1943), and *Entex v. City of Pearland*, 990 S.W.2d 904 (Tex. App.-Houston [14th Dist.] 1999, pet. denied), to support their contention that their suit against HL&P was brought in their governmental capacities, thus precluding the application of laches. However, we need not determine whether the Cities entered into the contract with HL&P in their governmental or proprietary capacity. Texas courts have repeatedly held that, although equitable defenses do not generally apply to governmental entities when they are acting in their governmental capacity, equitable defenses may apply when justice requires it and no governmental function is impaired. *See Roberts v. Haltom City*, 543 S.W.2d 75, 80 (Tex.1976) (recognizing exception to general rule and applying estoppel to city's claim); *City of Dallas v. GTE Southwest, Inc.*, 980 S.W.2d 928, 937 (Tex.App.-Fort Worth 1998, pet. denied) (applying waiver against city in franchise fee dispute because city knowingly accepted fees over six-year period); *City of Corpus Christi v. Nueces County Water Control and Improvement Dist. No. 3*, 540 S.W.2d 357, 378–79 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.) (applying laches to claims by city, which stood by for 40 years while water district made use of and became dependent on water supply).

In this case, Wharton and Galveston accepted HL&P's franchise payments, apparently without question regarding the basis of the payments, from 1958 to 1996, and Pasadena did the same from 1965 to 1996, when this lawsuit was filed. Thus, the Cities did not raise any objection to the payments, nor did they question the payments for well over 30 years, but simply accepted the payments from HL&P. Under these circumstances, we hold that the defense of laches is available in this case.

■ Having determined that the defense of laches is available to HL&P, we must now consider if there is legally sufficient evidence to support the jury's finding that laches applied to the Cities' claims. The essential elements of laches are (1) unreasonable delay in asserting one's legal or equitable rights and (2) a good faith change of position by another to his detriment because of the delay. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex.1998). We hold that a delay of over 30 years is unreasonable as a matter of law. Therefore, we must consider only the evidence and reasonable inferences that support the jury's finding that laches applied to the City's claims. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). If there is any evidence to support the jury's answer, we must reverse the ruling of the trial court. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990).

The evidence showed that HL&P was entitled to bill its customers for the amount of the franchise fee. Had the Cities questioned the amount of the fee in a timely manner, HL&P could have adjusted its rates with the approval of the PUC. HL&P's president testified that, because of the delay in the Cities' claims, the company must now try to collect from today's customers fees that should have been paid by customers in years past or pay the fees from money that should go to the shareholders. In addition, there was evidence that the HL&P officers and many of the

city officials who conducted the negotiations for the agreements are now deceased, making it difficult to determine the intent of the parties in entering into the agreements. HL&P's failure to collect 4% of its gross receipts on those revenues challenged by the Cities in this litigation and its inability to collect the disputed fees from the customers whose purchases would have generated the fees are some evidence of a change of position that was detrimental to HL&P because of the delay.

Accordingly, we sustain HL&P's third point of error.

Because our disposition of HL&P's third point disposes of all issues in this appeal except for the issue of attorneys' fees, we do not reach HL&P's remaining points of error, except for that point of error concerning attorneys' fees.

### Attorneys' Fees

█ In its fourth point of error, HL&P contends that the trial court misconstrued the parties' stipulation to attorneys' fees of 40% of the damages awarded to the Cities in this case and that the trial court improperly considered post-verdict filings and abused its discretion by awarding attorneys' fees of $13,683,181.

To simplify the issue of attorneys' fees, the parties entered the following stipulation into the record:

> Houston Lighting & Power Company and Houston Industries Finance, Inc. stipulate that in the event that damages are awarded to Wharton, Pasadena or Galveston in this case, that reasonable and necessary attorney's fee of 40% of all damage amounts, excluding attorneys fees, expenses or costs, will be awarded to Plaintiffs' counsel.

After the trial court announced that it interpreted the stipulation to be to 40% of the damages awarded by the jury, HL&P objected. The Cities then requested the court to consider evidence to establish that the $13 million award for attorneys' fees was reasonable and necessary. Their request was granted, and the court considered their evidence. In the final judgment, attorneys' fees were awarded as follows:

> [It is further,] **ORDERED, ADJUDGED AND DECREED** that the Plaintiff cities are held to be the prevailing parties in this action under the Texas Declaratory Judgment Act and regarding the breach of contract claims. The Court, therefore, takes judicial notice of the contents of the Court's file in this matter, the number of hearings it has conducted, the number of witnesses and depositions, the obligations and performance of tasks required by Plaintiffs' counsel as well as the proof and documents submitted by the Plaintiffs to establish their attorney's fees on recoverable claims in this case. Separately, the Court also takes judicial notice of the agreements between the parties regarding attorney's fees *relating to jury findings*. The Court further recognizes its separate authority to award attorney's fees to the prevailing party under the Texas Declaratory Judgment Act and Chapters 37 and 38 of the Texas Civil Practices and Remedies Code. Accordingly, it is,

> **ORDERED, ADJUDGED AND DECREED** that the city of Wharton have and recover from Reliant Energy the sum of $4,561,060.33 in attorney's fees in this case. The Court finds this to be a reasonable, necessary and just award of attorney's fees in this action pursuant to the Declaratory Judgment Act, the statutory authority for recovery of attorney's fees for breach of contract actions, as well including amounts under as [*sic*] the Rule 11 Agreement entered into between the parties *relating to jury find-*

*ings.* The award of attorney's fees is authorized under each of the foregoing grounds independently. (Emphasis added.)

Identical paragraphs follow, awarding the City of Galveston $4,561,060.33 and the City of Pasadena $4,561,060.34 in attorneys' fees. Thus, the trial court awarded attorneys' fees to the Cities on two bases—as a prevailing party under the Declaratory Judgment Act and upon HL&P's stipulation. Because, under our ruling, the Cities are no longer prevailing parties, we need not consider that basis for the award. We consider only the effect of the stipulation by HL&P.

The Cities argue that the stipulation does not provide for 40% of an award "in the judgment" and that it would be improper to limit the stipulation to the amounts awarded in the judgment when there are no such limitations in the stipulation. Although they argue that the stipulation unambiguously refers to the jury award, they argue in the alternative that, if the stipulation is ambiguous, HL&P's interpretation is unreasonable and, under the rules of contract construction, the stipulation should be construed in favor of the Cities.

▬▬▬ A mere disagreement between parties on the meaning of a contract does not create an ambiguity. *GTE Mobilnet v. Telecell Cellular, Inc.,* 955 S.W.2d 286, 289 n. 1 (Tex.App.-Houston [1st Dist.] 1997, writ denied). An agreement is ambiguous only if it is subject to more than one reasonable interpretation. *Nat'l Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex.1995).

▬▬▬ A stipulation is a binding contract between the parties and the court. *Fed. Lanes, Inc. v. City of Houston,* 905 S.W.2d 686, 689 (Tex.App.-Houston [1st Dist.] 1995, writ denied). A stipulation

serves as proof on an issue that otherwise would be tried. *Hansen v. Academy Corp.,* 961 S.W.2d 329, 335 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). A stipulation is conclusive on the issue addressed, and the parties are estopped from claiming to the contrary. *Shepherd v. Ledford,* 962 S.W.2d 28, 33 (Tex.1998).

The Cities argue that the stipulation in this case "unambiguously agrees to attorney's fees in the amount of 40% of the damages awarded *by the jury.*" (Emphasis added.) In contrast, HL&P contends that the stipulation clearly awards attorneys' fees based on the *final outcome* of the case. Thus, each party adds words not found in the written stipulation for the purpose of emphasizing that party's interpretation. To create an ambiguity, both of these interpretations must be reasonable. *Columbia Gas Trans. Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996).

HL&P's interpretation of the stipulation is consistent with a common method of determining attorneys' fees—a fee calculated as a percentage of the amount of the recovery in the final judgment. This interpretation recognizes that a judicial determination may be made regarding the propriety of the jury's finding regarding damages and also recognizes the possibility of a modification in a review by an appellate court. We conclude that HL&P's interpretation is reasonable.

The Cities' interpretation would award attorneys' fees based on a jury determination of damages, even though a plaintiff might not be entitled to some or all of those damages. The unreasonableness of this interpretation is apparent when carried to its logical conclusion: a take-nothing judgment rendered on appeal of the judgment could still result—as in this case—in a significant award of attorneys' fees to the non-prevailing party. The Cities evidently argue in favor of such a result

by contending that "because the stipulation is based on amounts awarded without regard to the appellate disposition of this case, the Cities are entitled to those attorney's fees *under any possible appellate scenario.*" We conclude that the Cities' interpretation is unreasonable.

We hold that the stipulation is not ambiguous and that HL&P's interpretation of the stipulation is the only reasonable one. Accordingly, we sustain HL&P's fourth point.

## CONCLUSION

We reverse the judgment of the trial court and render judgment that the Cities take nothing.