OPINION

JAMES T. WORTHEN, Chief Justice
Jerry Weaks and Joyce Weaks appeal an adverse summary judgment rendered in Kathleen Jeanette White’s suit against them concerning an executory contract for the conveyance of real property. On appeal, the Weakses raise three issues concerning the applicability of common law defenses and the awards for damages and attorney’s fees. We affirm.

Background

On June 5,2002, the Weakses, as sellers, and White, as purchaser, executed a document entitled “Contract for Dééd” pursuant to which White agreed to make a down payment and monthly installments for ten years to purchase a small tract of land and a mobile home. White did not make a payment in December 2011, January 2012, or February 2012. In February 2012, the Weakses demanded that she pay the amount past due as well as the remaining amount due under the contract, a total of $2,142.74, within three days of the demand letter, “or be out.” On February 23, either at the Weakses’ direction or by mistake, the water meter was removed from the property, depriving White of access to water. On March 15,, 2012, while still residing in the property at issue, White sued the Weakses for violations-of Chapter 5, Subchapter D, of the Texas Property Code, the Texas Deceptive Trade Practices Act, and breach of their duty of good faith and fair dealing. She. asked for statutory damages, economic and actual damages, damages for mental anguish, exemplary damages, and cancellation and rescission of the contract. She also sought a writ to restore her water service and a temporary restraining order to restrain the Weakses from affecting her utility services or interfering with her use and enjoyment of the property. Additionally, she asked for an award of attorney’s fees.
The trial court immediately signed the requested temporary restraining order and writ to restore the water. Shortly thereafter, the court signed' a' temporary injunction. Six months later, while still residing on the property at issue, White filed a motion for summary judgment addressing four sections of Chapter 5 of the property code. In support of her motion, she relied on deemed admissions, her affidavit, her attorney’s affidavit, the contract for deed, and the Weakses’ demand letter. She specifically waived all causes of action and relief not requested in the motion.
The Weakses responded to the motion, asserting, that they complied, or at least substantially complied, with the statutory requirements. They also asserted that White is estopped from seeking damages and barred by laches. They averred generally that “it appears that there are genuine issues as to material facts.” In support of their response, the Weakses provided only an affidavit signed by both of them.
After a hearing on the motion, the trial court found that the Weakses failed to comply with four sections of Chapter 5 of the property code as alleged and that White is entitled to damages and attorney’s fees. The court rendered a partial summary judgment adjudging the Weaks-es liable for violation of property code Sections 5.069, 5.070, 5.072, and 5.077. The court decreed that White is entitled to recover $43,319.53 less the dollar amount of the rental value of the months that she occupied the property after she rescinded *436 the contract by filing suit. The court further decreed that the Weakses are liable to-White for $1,000.00 for violation of Section 5.077 and ordered them to pay attorney’s fees in the amount of $10,250.00.
The parties stipulated' that White occupied the property for twenty-one months after filing suit and the fair market rental value was $356.81 per month for a total offset of $7,493.01. In the final judgment, the court adjudged that White recover from the Weakses $35,826.52 in damages, $10,250.00 in attorney’s fees, and costs of court.
, Offset
In their first issue, the Weakses contend that the trial-court, erred in .determining the proper offset or reasonable . rent against the refund of White’s purchase money. They argue that if White were to receive the amount awarded, without restoring thé rental value -of her occupation of the property, she would be receiving an unfair windfall. They assert that the purchaser must pay restitution for the total ■period of time she occupied the property, not just the time period after giving notice of rescission. Accordingly, the argument •continues, the purchase money figure determined by the trial court, • $43,319:53, Should be offset by the number of months that White occupied the property, 139, multiplied by. the reasonable rental value. The parties agreed that the reasonable rental value was $356.81 per month. This would result in a restitution .figure of $49,596.59, completely offsetting the reimbursement due under the judgment. Additionally, White would owe $6,277.06 for her occupancy.

Applicable Law

A contract for deed, unlike a typical secured transaction involving a deed of trust, is a financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full. Morton v. Nguyen, 412 S.W.3d 506, 509-10 (Tex.2013). Chapter 5, Subchapter D of the Texas Property Code imposes various conditions and disclosure requirements on sellers entering into contracts for deed, also known as executory contracts for the conveyance of real property. Tex Prop. Code Ann. §§ 5.069-.074, 5.076-.077 (West 2014). A seller’s failure to comply with Subchapter D’s requirements entitles a buyer to “cancel and rescind” a contract for deed and “receive a full refund of.all payments made to the seller.” Id, at §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2), ■ Subchapter D’s cancellation- and-rescission remedy contemplates the common law element of mutual restitution. Morton, 412 S.W.3d at 511. Thus, while the buyer is entitled to a full refund of all payments made to the seller, the statute also requires that the buyer restore to the seller the value of the buyer’s occupation of the property. Id. at 512. The buyer must restore to the seller supplemental enrichment in the form of rent for the buyer’s interim occupation of the property upon cancellation and rescission of the contract for deed. Id, at 508.

Analysis

The parties agreed that White rescinded the contract on the date she filed her petition. The trial court determined that the offset amount should be $7,493.01 based on the twenty-one months that White occupied the property after she filed this suit. The property code provides that the seller’s failure to furnish certain required information to the purchaser “entitles the purchaser to cancel and rescind the executory-contract and receive a full refund of all payments made to the seller.” Tex. Prop, Code Ann. §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2). The Texas Supreme Court has considered the question *437 of whether a rescinding purchaser' must restore to the seller the benefits the purchaser received under the contract. That court determined.that, upon rescission, the purchaser must restore to the seller the value of the purchaser’s post-rescission occupation of the property, See Morton, 412 S.W.3d at 512. Because the trial court’s formula conforms to the supreme court’s interpretation of Chapter 5, Subchapter D regarding this issue, we overrule the Weakses’ first issue. ¡
Common Law Defenses
In their second issue, the Weakses assert that the trial court erred in failing to recognize any common law defenses to White’s claims. • They argue, that they raised the defenses of estoppel and laches in their -response to White’s, motion for summary judgment, and they were , therefore entitled to a trial on the-merits. They rely on Morton v. Nguyen, where the supreme court recognized a common law element and applied it to the statutory remedy in Subchapter D, extrapolating that the same reasoning applies to estoppel and laches.

Applicable Law

Statutory construction is a legal question, which we review de novo. Tex. Lottery Comm’n v. First State Bank of DeQueen, 325 S.W.3d 628, 635 (Tex.2010); City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex.2008). Our primary objective when construing a statute is to determine the Legislature’s intent. Tex, Lottery Comm’n, 325 S.W.3d at 635. If the statute is unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. State v. Shumake, 199 S.W.3d 279, 284 (Tex.2006). We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction. Tex. Gov’t Code Ann. § 311.023(1),(3),(5) (West 2013); Shumake, 199 S.W.3d at 284.
Statutes may modify common law rules. Dugger v. Arredondo, 408 S.W.3d 825, 829 (Tex.2013). A statute may be interpreted as abrogating a principle of common law only when either the express terms of the statute or its necessary implications clearly indicate such an intent by the legislature. Bruce v. Jim Walters Homes, Inc., 943 S.W.2d 121, 122-23 (Tex.App.-San Antonio 1997, pet. ‘denied). Common law defenses may not be used to defeat claims brought under a statute that was not designed to be a codification of the common law;. Smith v. Baldwin, 611 S.W.2d 611, 616 (Tex.1980) (held that DTPA not designed to be codification of common law; DTPA was designed to provide consumers a cause of action for deceptive practices-without the burden of proof and numerous defenses encountered in a common law fraud or - breach of warranty suit); Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 264 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.) (op. on reh’g) (held that common law defense of contributory negligence cannot defeat insurance code claims).
Estoppel based in law prevents a party from taking positions contrary to those it-took in property deeds and contracts in order to preserve the document’s integrity. See Mathews v. Sun Oil Co., 411 S.W.2d 561, 564. (Tex.Civ.App.-Amarillo 1966),- aff'd, 425 S.W.2d 330 (Tex.1968). Quasi-estoppel is an equitable doctrine that prevents a party from asserting, to another’s disadvantage, a right inconsistent with a position previously taken. Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex.2000). The doctrine applies when it would be unconscionable to allow -a person to maintain a position inconsistent with one to Which he acquiesced, *438 or from which he accepted a benefit. Id. Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction .or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. Brooks v. Brooks, 257 S.W.3d 418, 423 (Tex.App.Fort Worth 2008, pet. denied).
The defense of laches precludes a plaintiff from asserting legal rights .after an unreasonable delay against a defendant who has changed his position in good faith and to his detriment because of the delay. Fair v. Arp Chub Lake, Inc., 437 S.W.3d 619, 625 (Tex.App.-Tyler 2014, no pet.). Laches is generally available as an affirmative defense solely in suits in equity and therefore does not apply to statutory challenges. Phillips v. The Dow Chem. Co., 186 S.W.3d 121,129 (Tex.App-Houston [1st Dist.] 2005, no pet.). In such a suit, absent extraordinary circumstances, the statute of limitations is the appropriate defense. Houston Lighting & Power Co. v. City of Wharton, 101 S.W.3d 633, 638 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

Analysis

Although the Weakses’ argument does not make it clear which type of estop-pel they assert, it seems most likely estop-pel based in law or quasi-estoppel. The pertinent portion of the Weakses’ summary judgment response is as follows:
Plaintiff would appear to be estopped from making any further complaints, or seeking damages, from or- in regard to the Weaks, and would also be barred by laches. This is because of the approximately 10 years that Plaintiff occupied the property, made the payments (although usually late), and made no complaint about any of the matters referred to in her petition or motion for summary judgment. This is additionally because, after the misunderstandings regarding the water meter were resolved, Plaintiff continued to either occupy the property herself, or she let family members live in the house on the property. , .
Because the suit arises from the partiés’ executory contract for the conveyance of real property, we consider the history of the applicable statute. In 1995, the legislature amended Chapter 5 of the property code to address serious abuses in the Texas-Mexico border region known as “the colonias,” a rural area where many residents were financing the purchase of their homestead properties through contracts for deed. See Flores v. Millennium Interests, LTD., 185 S.W.3d 427, 434-35 (Tex. 2005) (Wainwright, J., concurring). The legislature acted to provide legal protection to these purchasers. The legislature further amended Chapter 5 in 2001 to extend these protections to the remainder of the state’s contracts for deed. Id. at 435.
Subchapter D of Chapter 5 does not explicitly address the application of common law defenses. However, the Legislature is capable of doing so when it chooses. See, e.g., Tex. Civ. PRAc, & Rem. Code ann. § 73.006 (West 2011) (providing that statute addressing libel does not affect the existence of common law, statutory law, or other defenses to libel); Tex. LaboR Code Ann. § 406.033 (West Supp.2014) (providing that certain common law defenses are unavailable against an employer by an employee who is not covered by workers’ compensation insurance and the section does not reinstate or otherwise affect the availability of defenses at common law); Tex. Fam. Code Ann. § 4.105(c) (West 2006) (providing that the remedies and defenses in the section regarding marital agreements are the exclusive remedies or defenses, including common law remedies or defenses).
*439 . Subchapter D was enacted' to protect purchasers who execute a contract for deed. Flores, 185 S.W.3d at 435. The statute provides specific remedies to the aggrieved purchaser when the seller does not comply with the statute. The purchaser is authorized to cancel the contract and obtain a full refund of all payments made to the seller up to the point of cancellation. See Tex. PROP. Code Ann. §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2)..' There is no indication that the Legislature intended estoppel defenses .to be used to deny purchasers the statutory remedy.
Furthermore, application of an es-toppel defense would prevent the purchaser from cancelling the contract for deed and getting her money refunded after having the benefit of living on the property. This is the opposite of what the statute provides. In Morton, the court focused on the term “rescind” in Sections 5.069(d)(2), 5.070(b)(2), 5.072(e)(2), and 5.085(c)(2) and determined that “rescission is the common name for the composite remedy of rescission and restitution.” Morton, 412,S.W.3d at 510. Because rescission requires “mutual restitution,” the court concluded that “the Legislature intended Subchapter D’s cancellation-and-rescission remedy to also contemplate the common law element of mutual restitution.” Id. at 511. There are no terms in Subchapter D that appear to contemplate the common law affirmative defense of estoppel. On the contrary, Subchapter D heavily favors the purchaser when the seller is at fault. Accordingly, the common law defense of estoppel cannot be used to defeat claims brought pursuant to Chapter 5, Subchapter D of the property code. See Smith, 611 S.W.2d at 616.
White’s lawsuit raised claims pursuant to the property code. The statute of limitations is the appropriate defense, not the equitable defense of laches, and this case presents no extraordinary circumstances. See Houston Lighting & Power Co., 101 S.W.3d at 638. While the supreme court in Morton determined that the Legislature intended Subchapter D’s cancellation and rescission remedy to also contemplate the common law element of mutual restitution, we detect no such intention to contemplate the use of the common law defenses of estoppel and laches. We overrule the Weakses second issue.

Attorney’s Fees .

In their third issue, the Weakses assert that the’ trial court erred in awarding White the total amount of attorney’s fees she claimed. ' They argue that only her claim pursuant to Section 5.Ó77 provides for an award of attorney’s fees. Therefore, the argument continues, she Should be awarded fees only for the work she did on that one blaim. The failure" to limit the award to that claim, they assert, results in an attorney’s fees award that is unreasonable. They request the award be reduced or the issue of attorney's-fees be remanded for a hearing on the merits.

Applicable Law

When a lawsuit involves multiple claims, the proponent of attorney's fees must segregate recoverable fees from those incurred on claims for which fees are not recoverable. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311 (Tex. 2006), Or, the party seeking to recover attorney’s fees bears the burden of demonstrating that segregation is not required. Id.
A timely objection, with supporting. controverting evidence on the question of which fees are recoverable is needed to reverse an award that includes nonsegregated fees. See Rapid Settlements, Ltd. v. Settlement Funding, LLC, 358 S.W.3d 777, 787 (Tex.App.-Houston [14th Dist.] 2012, no pet:). Therefore, a *440 party waives any error arising from possibly awarding nonrecoverable fees when the complaining party does not object to failure to segregate between legal services for which fees are properly recoverable and- those for which no recovery of fees is authorized. Gwen Int’l, Inc. v. Solis, 951 S.W.2d 384, 389 (Tex.1997).

Analysis

In her motion for summary judgment, White alleged that she is entitled to an award of attorney’s fees pursuant to property code Section 5.077(c)(2). See Tex. Prop. Code Ann. § 5.077(c)(2) (West 2014). She presented as supporting evidence the affidavit. of her attorney who asked for $10,250.00 as compensation for the time she spent working on the case. The Weakses did not address the claim for attorney’s fees in their response to the motion for summary judgment. .
At the hearing on the motion, the trial court orally ruled m White’s favor on her four claims of property code violations and the claim for attorney’s fees. The Weaks-es raised the issue of the need to segregate attorney’s fees in a post-summary judgment hearing letter brief and a motion to disregard the court’s prior finding. At a later hearing, White objected to reconsideration of the attorney’s fee issue and the trial' court sustained the objection, specifically stating that it would not reconsider that issue. The court’s final summary judgment incorporates its prior liability rulings and orders the Weakses to pay $10,250.00 in attorney’s fees.
A purchaser recovering liquidated damages under Section 5.077 of the property code is entitled to reasonable attorney’s fees.- See Tex. PROP. Code Ann. § 5.077(c)(2). Sections 5.069, 5.070, and 5.072, the other bases for White’s claims, do not authorize an award of attorney’s fees. See Tex, Prop, Code Ann, §§ 5.069, 5.070, 5.072. Accordingly, we agree with the Weakses’ contention that White was actually entitled only to attorney’s fees attributable to her attorney’s work on her Section 5.077 claim.
However, because the Weakses’ segregation argument' was not included in a timely response, the viability of their late complaint was left to "the discretion of the trial court. See Harvey v. Alexander, 671 S.W.2d 727, 729 (Tex.App,-Fort Worth 1984, no writ). The Weakses do not assert on appeal that the trial court abused its discretion by refusing to consider their late segregation argument. Accordingly, the Weakses waived their complaint that White failed to segregate .recoverable fees from those incurred on claims for which fees are - not recoverable. See Solis, 951 S.W.2d at 389. We overrule the Weakses third issue.

Disposition

Having determined the trial court committed no reversible error, we affirm the trial court’s judgment.
Neeley, J., concurring in part and dissenting in part.