**Opinion issued April 15, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-19-00420-CV**

———————————

**AMITA DESAI, Appellant**

**V.**

**GOOD HOPE MISSIONARY BAPTIST CHURCH OF HOUSTON, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-43768**

---

## MEMORANDUM OPINION

Appellant, Amita Desai, contracted with appellee, Good Hope Missionary Baptist Church of Houston ("Good Hope") to purchase a vacant lot in Houston, Texas for $2,300,000. After the sale failed to close, Desai sued Good Hope for specific performance. A jury concluded that neither party breached the contract,

and the trial judge entered a judgment in Good Hope's favor, refusing to award Desai specific performance of the contract and awarding Good Hope attorney's fees as the prevailing party. On appeal, Desai contends that, because she conclusively proved that Good Hope breached the contract, the trial court erred in refusing to disregard the jury's finding that Good Hope did not breach the contract. We reverse and render in part and reverse and remand in part.

## BACKGROUND

### *The Contract*

Good Hope owns unimproved real property located at 1400 West Dallas Street, Houston, Texas. The Church and Desai executed an Unimproved Property Contract on March 31, 2014. Pursuant to the contract, Good Hope agreed to sell the property to Desai for $2,300,000. The contract required Desai to pay the agreed upon price and required Good Hope to "furnish to [Desai] at [Good Hope's] expense an owner's policy of title insurance (Title Policy) [i]ssued by American Title Co. ("American Title") in the amount of the Sales Price, dated at or after closing, insuring [Desai] against loss under the provisions of the Title Policy . . . ."

The contract provided for a June 1, 2017 closing date (extended by agreement of the parties until June 2, 2017) and provided that "[i]f either party fails to close the same by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15," which provides as follows:

2

If Buyer fails to comply with this contract, Buyer will be in default and Seller may (a) enforce specific performance, seek such other relief as may be provided by law or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

The Contract provided the following relevant responsibilities of the parties at closing.

(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the property.

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by the Buyer and assumed loans will not be in default.

American Title was chosen to close the transaction, and both the contract and Desai's $25,000 earnest money check were deposited with American Title on April 1, 2014. That same day, American Title opened title and designated Veronica Corona as its closing agent for the transaction.

*The Title Encumbrances*

On April 7, 2014, American Title issued a title commitment, which it forwarded to Michael Williams on April 24, 2014. Williams, the chairman of Good Hope's Board of Trustees, acted as its representative in the transaction. The April 24 email to Williams asked for a survey of the property and to review Schedule C of the commitment, which contained a list of title problems that, if not cleared, would prevent the sale from closing.

Specifically, Schedule C contained four liens from the City of Houston and instructed that a release was needed for those liens before closing. Schedule C also contained two bank deeds of trust on the property: One secured a $220,150 loan from JPMorgan Chase Bank and the other secured a loan from Amegy National Bank for $5,600,000 and provided that it could be released in exchange for a $100,000 payment.

There were also seven items relating to demolition liens imposed by the city of Houston. For each of those items, Good Hope was instructed:

> [The] title company will require the following: A release from the City of Houston releasing same is to be recorded in the Real Property records of Harris County, Texas. Obtain a "payoff statement" from the assessing authority, indicating whether any money is owing for the repair, removal or demolition.

The commitment also reflected several lawsuits filed by various taxing agencies because of delinquent taxes on the property, and Good Hope was

4

instructed that before the title-insurance policy could be issued, "[w]e must verify that any such taxes, together with interest, penalties, and/or attorney's fees and court costs, if any, have been paid."

Finally, American Title instructed Good Hope that:

> We must be furnished with a copy of Articles of Incorporation and a Corporate Resolution of record owner indicating names of the principles and identifying those persons authorized to act on behalf of said corporation. In addition, we must be furnished with an affidavit stipulating that there have been no amendments to said articles and stating who is/are still empowered to act on behalf of said corporation.

### The Failed Closing

After the April 24 email to Williams, which included the Schedule C items that needed to be cleared before closing, there was some issue regarding the communication between Williams and Corona. Good Hope contends that "after the April 24, 2014 email American Title went silent for a month because the closing agent, Corona, went on vacation and no one else at the company worked on the file." Corona testified that she did not go on vacation, and that even though she sent an email to Williams that bounced back, she had been in communication with him, but he was unresponsive to her requests.

The next email between Williams and Corona was May 22, 2014, 11 days before closing. In this email, Corona requested (1) corporate documents and resolutions authorizing the sale of the property, (2) payoff information for the Amegy bank lien, and (3) payoff information for the JPMorgan Chase Bank lien.

5

American Title indicated to Williams that it would attempt to obtain releases of the City of Houston liens, and it initiated attempts to do so the next day.

Sometime before May 29, 2014, Desai called Corona and asked how much money she needed to have available to close the transaction on June 2, 2014. Corona told her that American Title was not ready to close so Desai should not send any funds because the closing would not take place on June 2. On June 2, 2014, Williams sent Corona an email that included some of the requested information about Good Hope's corporate resolutions and asked about the time of the closing. Corona told Williams that they could not close that day and that Desai had already been informed.

On June 3, after the failed closing, Desai emailed Williams and Corona, stating that she would need three days' advance notice of any future closing day in order "to set up our funding prior to closing." At trial, Williams claimed to be surprised that Desai needed or planned to use financing to close the transaction, even though the contract permitted her to do so. Desai presented evidence that she, even as of the date of the closing, had sufficient funds to close without borrowed money, but that once the closing date passed, she did not execute any documents to obtain financing.

Neither party immediately declared a default in the contract. Instead, Desai requested that Good Hope execute a letter extending the closing day to July 3, 2014, and Good Hope continued to try to obtain the documents required to close.

*Events After the Failed Closing*

On June 11, 2014, Good Hope sent a letter to Desai declining her request to extend the closing date and informing her that because it had been ready to close on June 2, the contract was no longer valid. The next day, June 12, 2014, Good Hope emailed Corona confirming its termination of the contract and requesting that American Title return Desai's earnest money to her. At trial, Good Hope presented evidence that it declined to extend the contract because it needed the money to pay the Harris County taxing authorities no later than July 1, 2014. In contrast, Desai presented evidence to suggest that Good Hope terminated the contract because its board members had met with a real-estate broker who told them that the property was worth $3,500,000 to $5,500,000; much more than the $2,300,000 million dollars that Desai had contracted to pay Good Hope.

*The Jury Verdict*

Desai filed suit against Good Hope on July 30, 2014, and, after several continuances and the recusal of the first judge assigned to the case, the case proceeded to trial on January 7, 2019. In Question 1 of the jury charge, the jury was asked whether either party failed to comply with the contract. In its answer to

7

Jury Question 1a, the jury found that Good Hope did not fail to comply; in its answer to Jury Question 1b, the jury found that Desai did not fail to comply. In Question 2, the jury was asked whether either parties' failure to comply with the contract was excused. In light of its negative answers to Jury Questions 1a and 1b, the jury never reached Question 2. In Jury Question 3, the jury was asked "who failed to comply with the Contract first." Again, because of the negative answers to Jury Questions 1a and 1b, the jury did not answer Jury Question 3. In Jury Question 4, the jury was asked, "Was Amita Desai ready, willing and able to pay Good Hope Missionary Baptist Church the sum of $2,300,000 at all times on and after June 2, 2014 through the present?" The jury answered Jury Question 4, "Yes."

***Post-Verdict Motions and Final Judgment***

Post-verdict, Desai filed a Motion to Disregard Jury Finding, asking the trial court to disregard the jury's answer to Question 1a, in which the jury had found that Good Hope did not breach the contract. Desai argued that the jury's answer was immaterial and should have been disregarded. Post-verdict, Good Hope filed a Motion for Entry of Final Judgment and for Determination of Attorney's Fees and Costs. In its motion, Good Hope argued that because the jury found that it did not breach the contract, it was the prevailing party. As the prevailing party, Good Hope "mov[ed] for entry of a final judgment disposing of all issues and all parties[,]"

and, argued that, under the contract, it was "entitled to recover its attorney's fees and costs." Good Hope did not move to set aside the jury's answers finding that Desai did not breach the contract and that she was "ready, willing and able to pay . . . at all times on and after [the June 2 closing through trial]." The trial court granted Good Hope's motion and denied Desai's motion.

Thereafter, the trial court entered a Final Judgment in Good Hope's favor, awarded Good Hope reasonable and necessary attorney's fees, and vacated the notice of lis pendens previously filed by Desai. Desai filed a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial, both of which the trial court denied. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In her first issue on appeal, Desai contends that she "is entitled to specific performance of the Contract," because "[t]he evidence conclusively proved [Good Hope's] failure to comply with material terms of the contract." Specifically, Desai argues that "the jury's failure to find breach by [Good Hope] should have been disregarded as immaterial."

### *Standard of Review and Applicable Law*

A trial court may disregard a jury finding when the question is immaterial or there is legally insufficient evidence to support the finding. *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 27 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing

*Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)). A question is immaterial: "(1) if the question should not have been submitted; (2) if the question was rendered immaterial by other findings, or (3) if the question called for a finding not within the jury's province, such as presenting a question of law for the court." *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 140 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Spencer*, 876 S.W.2d at 157). A trial court's decision on a motion to disregard based on a legal issue is reviewed de novo. *Hall*, 292 S.W.3d at 27– 28 (citing *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)). When the motion to disregard is based on a complaint that the evidence is legally insufficient, we employ the well-settled legal sufficiency or "no evidence" review. *See Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). The evidence is legally insufficient when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In determining whether there is legally sufficient evidence, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard

10

evidence contrary to the finding unless a reasonable factfinder could not. *Id.* at 807, 827.

*Analysis*

Desai argues that the evidence conclusively established that Good Hope failed to comply with the material terms of the contract by: (1) failing to convey the property and deliver a general warranty deed, (2) failing to procure a title-insurance policy, and (3) failing to close by the closing date.

Good Hope responds, arguing that "ample evidence supports the jury's determination that [Good Hope] did not breach the contract." In support, Good Hope argues that, had Desai gone to the closing with the money, Good Hope could have paid all the outstanding liens and "delivered good title to the Property free and clear of all liens and encumbrances on the June 2, 2014 closing date required by the contract." The gist of this argument is that Desai breached the contract first by not tendering the money at closing, thus Good Hope's breach in failing to deliver good title free and clear of liens was excused.

However, Good Hope cannot rely on a "prior material breach" by Desai to argue that there is legally sufficient evidence of its own breach for at least two reasons: (1) the jury found that Desai did NOT breach the contract, and (2) the jury found that Desai was "ready, willing and able to pay [Good Hope] the sum of $2,300,000 at all times on and after [the contractual closing date] through the

11

present."[1] Good Hope did not challenge these jury answers, either at trial or on appeal. Similarly, Good Hope moved for judgment on the verdict without asking the trial court to disregard these two jury answers. *See Casu v. Marathon Ref. Co.*, 896 S.W.2d 388, 389 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also Cosgrove v. Grimes*, 757 S.W.2d 508, 510 (Tex. App.—Houston [1st Dist.] 1988), *rev'd on other grounds*, 774 S.W.2d 662 (Tex. 1989) ("By moving for judgment in accordance with the jury verdict without a motion to disregard unfavorable answers, [appellee] affirmed that the jury's findings on all material issues were supported by the evidence, and he is bound thereby.").

There was also undisputed evidence that other items on Schedule C, in addition to items that *might* have been satisfied out of the sale proceeds, were still unfulfilled and could not have been fulfilled by closing, such as the City of Houston's demolition liens and Good Hope's corporate documents, which were necessary to prove that those acting on Good Hope's behalf actually had the authority to sell the property.

Veronica Corona of American Title testified that "[t]here are some liens that can be paid at closing such as payoffs . . . [h]owever, there are such liens in this particular case like demolition liens that cannot be taken care [of] at payoff."

---

[1] Even though the issue of "prior material breach" was submitted to the jury, the jury did not reach the issue because it found that neither party breached the contract.

Corona further testified that "a demolition requires certain documentation to be provided to the city for the city to provide either a payoff or instructions on what needs to be done to remove that demolition lien." Corona stated, "I can't take care of that after closing. There's no way for me to secure title after closing. I need that prior to."

Good Hope does not point to any evidence that the City of Houston's demolition liens were satisfied. Instead, it contends that "American Title advised the parties days before the closing date that it, in lieu of [Good Hope], had undertaken that particular task prior to closing." Good Hope further argues that "[it] did not refuse to timely obtain these releases prior to closing . . . [r]ather, the title company's unexplained delay in even requesting the releases—an obligation that it imposed upon itself rather than [Good Hope]—caused the failure of the releases to be escrowed prior to the June 2 closing date."

Corona also presented uncontroverted testimony that before Good Hope could deliver good title, she needed Good Hope's articles of incorporation, corporate resolutions, and an affidavit to show that the persons acting on Good Hope's behalf in the sale were, in fact, authorized to do so. These documents have never been sufficiently provided.

In both instances, Good Hope does not point to any evidence that it actually performed its obligations by providing the documents necessary to establish clear

title. Instead, Good Hope argues that its performance is excused either (1) because American Title undertook Good Hope's contractual duty and American Title failed to perform or (2) American Title canceled the closing thereby making Good Hope's performance a "useless act." However, the contention that a party to a contract is excused from performance is an affirmative defense that must be affirmatively pleaded. *See Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied). If an affirmative defense or avoidance is not expressly pleaded, the party cannot rely on the defense as a bar to liability. *See MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136–37 (Tex. 2014). Additionally, a party must not only plead its affirmative defenses; it must also obtain jury findings on those issues. *See* TEX. R. CIV. P. 279.

The only affirmative defense of excuse that Good Hope pleaded was a "prior material breach" by Desai, an issue the jury did not reach because it found that Desai did not breach the contract.[2] Good Hope did not plead, or obtain jury findings, on any of the other excuses it now offers for its failure to perform its obligations under the contract. Similarly, Good Hope did not file a claim against

---

[2]    In Good Hope's live trial pleading, the only "excuse" affirmative defense pleaded by Good Hope was that "[Good Hope's] conduct was excused and in compliance with the contract, and/or closing was justified due to [Desai's] failure to tender required funding an[d] perform pursuant to the terms of the sales contract."

American Title as a responsible third party under Texas Civil Practices and Remedies Code section 33.004. *See* TEX. CIV. PRAC. & REM. CODE § 33.004.

There being no evidence that Good Hope performed its obligations under the contract, the trial court erred in denying Desai's motion to disregard the jury's answer to Question 1, subsection 1a.

### *Specific Performance*

Having determined that Desai conclusively established Good Hope's breach, and that the trial court erred in not disregarding the jury's answer that Good Hope did not breach the contract, we turn to the issue of whether Desai is entitled to specific performance of the contract.

Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). Specific performance is not a separate cause of action but is instead an equitable remedy that is used as a substitute for monetary damages when such damages would not be adequate. *Ifiesimama*, 522 S.W.3d at 685; *Stafford*, 231 S.W.3d at 535.

Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed, or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender

15

performance as contractually required; and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). A party seeking the equitable remedy of specific performance in lieu of money damages may, in some circumstances, be excused from pleading and proving the second element, but must additionally plead and prove that, at all relevant times, it was ready, willing, and able to perform under the contract. *Id.* Contested fact issues, including prerequisites to obtaining equitable relief, are for the jury to resolve, and the burden of proof is on the party seeking a remedy. *Id.*

All elements entitling Desai to specific performance are present in this case. *See Pathfinder*, 574 S.W.3d at 890 (setting forth breach of contract elements and explaining how proven in claims for specific performance). All parties concede that a valid contract exists. In lieu of proving that she tendered the money, Desai obtained a jury answer that she was "ready, willing and able to pay [Good Hope] the sum of $2,300,000 at all times on and after June 2, 2014 through the present." Good Hope neither moved to set aside this jury finding, nor did it challenge the finding on appeal; indeed, it moved to enter judgment on the verdict without challenging this adverse finding. And, we have already held that Desai conclusively established that Good Hope breached the contract and that the trial court erred by refusing to set aside the jury answer that Good Hope did not breach

16

the agreement. It is uncontested that Desai suffered damages because of Good Hope's breach of the contract. *See Pathfinder*, 574 S.W.3d at 890.

Accordingly, we sustain issue one, reverse the judgment of the trial court, and render judgment in favor of Desai on her request for specific performance of the agreement.

## ATTORNEY'S FEES

After the jury verdict, the trial court awarded attorney's fees to Good Hope as the "prevailing party." In issue two, Desai contends the trial court erred in awarding Good Hope its attorney's fees; she contends that, as the prevailing party she should recover her attorney's fees. We agree for two reasons.

First, the contract provides:

A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

Second, Section 38.001(8) of the Texas Civil Practice and Remedies Code provides for the recovery of reasonable attorney's fees associated with a successful claim on an oral or written contract. TEX. CIV. PRAC. & REM. CODE § 38.001(8). To recover attorney's fees under this chapter, the claimant must (1) prevail on a cause of action for which attorney's fees are recoverable and (2) recover damages. *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). The Texas Supreme Court has established that a party satisfies this test when the court awards the party

17

"something, either monetary or equitable." *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009).

Since we have rendered judgment in favor of Desai on her equitable, specific performance claim, she is the prevailing party under both the contract and section 38.001(8). Accordingly, we reverse the judgment in favor of Good Hope on the issue of attorney's fees and remand for a determination of Desai's claim for attorney's fees.

## CONCLUSION

We reverse the portion of the judgment ordering that Desai take nothing from Good Hope, and we render judgment in favor of Desai on her claim for specific performance of the contract. We also reverse the portion of the judgment awarding Good Hope reasonable and necessary attorney's fees, costs, and interest, and, having determined that Desai is the prevailing party, we remand for a determination of her reasonable and necessary attorney's fees, costs, and interest.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.